**Lynn EDELMAN, and all others similarly situated**

v.

**Martin M. DECKER et al.**

**Civ. A. No. 70-3302.**

United States District Court, E. D. Pennsylvania.

Jan. 31, 1972.

David Winston, Philadelphia, Pa., for plaintiff.

Richard M. Rosenbleeth, Philip C. Patterson, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION

WEINER, District Judge.

In this action claiming violation of sections 10(b) and 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, § 78n, the jurisdiction of this Court has been challenged via the defendant's motion for summary judgment. As there is no disputed question of fact, the issues are ones of law and relate specifically to, first, whether or not the plaintiff may be considered a purchaser or seller of the shares of stock in order to provide jurisdiction for him to bring this action under section 10(b) of the Act, and secondly, whether or not the

prerequisites for the maintenance of a § 14(a) action have been established.

The plaintiff's claim is predicated upon an allegation that prior to August 14, 1970, the City Bank of Philadelphia ("City Bank") had sustained large unrealized losses on improvident loans made by the City Bank to one or more of its directors and to others. It is also charged that these losses were not disclosed in the Proxy Statement dated August 14, 1970, or the Annual Statement of Condition, dated April 30, 1970, both of which accompanied the Notice of Annual City Bank Stockholder's Meeting of September 4, 1970, which was mailed out to City Bank stockholders on or about August 14, 1970. On September 3, 1970, the Secretary of Banking of the Commonwealth of Pennsylvania took possession of City Bank's business and assets. The stockholders' meeting which had been scheduled for September 4, 1970 never took place.

On the basis of the above facts, plaintiff instituted this action on behalf of herself and all others similarly situated, alleging violations of Rule 10B–5 and sections 10(b) and 14(a) of the Securities and Exchange Act and two pendent counts. Thus, for this Court to have jurisdiction of the controversy, a cause of action must be made out under the Securities Act.

It is admitted that the plaintiff purchased her shares in February, 1970, considerably before the August 14 proxy, and still retains her shares. We note that the uncontradicted affidavit of Ralph E. Cades, who was President of the Bank and Chairman of its Board of Directors, states that there were no purchasers of City Bank shares whatsoever between August 14, 1970 and September 3, 1970. A subsequent affidavit of Cades stated that the total number of City Bank's stockholders was always less than 500, and that the list of stockholders as of August 14, 1970, indicated 384 stockholders.

The issues presented by the defendants in their challenge to the jurisdiction of this court may be characterized as follows:

(a) The plaintiff is neither a buyer nor a seller of securities and therefore has no standing to invoke the provisions of § 10(b), and

(b) The provisions of § 14(a) are not applicable because the number of shareholders of City Bank was less than 500.

We shall deal with the issues in the order set out above.

## ALLEGED SECTION 10(b) VIOLATIONS

Rule 10B–5, 17 C.F.R. 240.10b–5, promulgated under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, makes unlawful the employment of "manipulative and deceptive devices in connection with the purchase and sale of any security". In Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir. 1952) cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), the Court construed the language "in connection with the purchase or sale of any security." as limiting standing to sue to purchasers or sellers of securities. In *Birnbaum*, defendant, C. Russell Feldmann, who was president of Newport Steel Corporation and owned forty percent of the common stock (which was sufficient for voting control), broke off merger negotiations with Follansbee Steel Corporation, which merger, on the terms offered by Follansbee, would have been highly profitable to all the stockholders of Newport. Feldmann then sold his stock to Wilport Company at a price of approximately $22 per share, which was twice the then market value of the stock. Wilport Company was formed by a group of manufacturers, each of whom used substantial quantities of steel in their businesses, for the purpose of purchasing Newport and using its steel productive capacity as a "captive" source of supply during a market shortage of steel. This fact accounted for the premium paid to Feldmann for voting control of Newport. The complaint alleges that defendant Feldmann and others made certain mis-

representations to the stockholders of Newport in letters which stated that the negotiations with Follansbee had been suspended because of the "uncertain international situation" and which later reported the sale of Feldmann's stock but failed to state the selling price or that Newport was to become a "captive" subsidiary of Wilport.

Upon the above facts, the Court held that the plaintiffs, who were shareholders of Newport, had no standing to assert a cause of action under section 10(b) of the Securities Exchange Act because that section is "directed solely at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities rather than at fraudulent mismanagement of corporate affairs, and that Rule X–10B–5 extended protection only to the defrauded purchaser or seller." 193 F. 2d at 464. As no member of the plaintiff's class had either purchased or sold securities, the Court granted the defendant's motion to dismiss. Thus, the rationale of *Birnbaum* was that the case involved fraudulent mismanagement of corporate affairs rather than fraudulent practices in connection with the purchase and sale of securities.

The plaintiff in the case at bar contends that the strict purchaser-seller requirement has been relaxed by recent decisions, and does not act to bar a suit under § 10(b) by one who was induced by misrepresentations to keep his shares. Plaintiff cites two cases in support of his contention, but neither case is applicable to the factual allegations set out in the complaint.

### A

The plaintiff's reliance on Kahan v. Rosenstiel, 424 F.2d 161 (3d Cir. 1970), is misplaced. In *Kahan*, the Third Circuit stated at 173:

"Neither the language of § 10(b) and Rule 10b–5 nor the policy they were designed to effectuate mandate adherence to a strict purchaser-seller requirement so as to preclude suits for

relief if a plaintiff can establish a causal connection between the violations alleged and plaintiff's loss. We agree with the Second Circuit in *Crane* (Crane [Co.] v. Westinghouse Air Brake Co., 419 F.2d 787 (2d Cir. 1969) that a strict interpretation of the Securities Exchange Act is not warranted under the circumstances present here. The Act was designed to eliminate deceptive and unfair practices in security trading and to protect the public from inaccurate, incomplete and misleading information. The thrust of the Act and the decisions interpretating it is to give the investing public the opportunity to make knowing and intelligent decisions regarding the purchase or sale of securities. A suit which seeks to enjoin deceptive practices which if continued would lead to completed purchases or sales that give rise to a cause of action under § 10(b) is not inconsistent with this policy and will in fact promote free and open public securities markets".

While the above would appear at first to support the plaintiff's contention, the *Kahan* Court clearly limited the applicability of its decision to suits for injunctive relief. Thus, the Court predicated the passage set out above with the following paragraph:

"A broad view of the requirements for stating a claim for injunctive relief is particularly appropriate. In SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180 at 193 [84 S. Ct. 275, 11 L.Ed.2d 237] (1963), the Supreme Court said, 'It is not necessary in a suit for equitable or prophylactic relief to establish all the elements required in a suit for monetary damages'."

The "injunction suit variation" to the purchaser-seller rule has been recognized by the same Court that decided *Birnbaum*, supra. In Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540 (2d Cir. 1967), the defendants, after acquiring control of S. H. Kress & Co. ("Kress"), allegedly manipulated the market price

of Kress stock, keeping Kress dividends to a minimum, in order to force minority stockholders to sell out to Genesco at depressed values. Plaintiffs, who had become stockholders before these events and had not as yet sold their stock, sued for damages and injunctive relief under Rule 10B–5. The Court dismissed plaintiff's claim for damages on the grounds that plaintiffs were neither sellers nor purchasers of securities and that they had not as yet sustained any monetary damages. The Court, however, granted that a stockholder need not have purchased or sold stock as a result of the continuing violations in order to secure an injunction against them and thereby prevent future loss which, of course, would result from purchases or sales due to the manipulative activities.

The Second Circuit reaffirmed its damage-injunction variation in Greenstein v. Paul, 400 F.2d 580 (2d Cir. 1968) where it stated:

> "It has long been the rule in this circuit that to maintain an action under § 10(b) of the Act and Rule 10b–5 of the Securities and Exchange Commission the plaintiff must have been a seller of the stock involved. Birnbaum v. Newport Steel Corp., 193 F. 2d 461 (C.A. 2, 1952), *cert. denied* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). Although criticized, Entel v. Allen, 270 F.Supp. 60, 70 (S.D.N.Y., 1967), it is still the rule at least insofar as actions for damages are concerned. Mutual Shares Corp. v. Genesco, Inc., supra." 400 F.2d at 581.

It thus becomes apparent that the "injunction suit variation" is well recognized by the Second Circuit but that in actions for damages the purchaser-seller requirement remains intact. The Sixth Circuit has also indicated that in a suit for injunctive relief the buyer and seller requirements may be relaxed. Britt v. Cyril Bath Co., 417 F.2d 433, 436 (6th Cir. 1969). In *Kahan,* the Third Circuit arrived at a similar conclusion, and the case was distinguished on this basis in Rekant v. Desser, 425 F.2d 872, 877 (5th Cir. 1970). Thus, as the case at bar is necessarily one for damages only, the plaintiff's reliance upon *Kahan* is misplaced as the purchaser-seller requirement has not been complied with.

### B

The second case cited by plaintiff in support of her position is Stockwell v. Reynolds & Co., 252 F.Supp. 215 (S.D. N.Y.1965). In *Stockwell,* the plaintiffs opened a securities brokerage account with defendant and were informed that a partner in the brokerage firm was also a director of Alside, Inc. ("Alside"), the stock of which is listed on the New York Stock Exchange. After purchasing shares of Alside through their brokers, the plaintiffs asked the defendants to sell their shares. The cause of action arose when the plaintiffs were dissuaded from selling by fraudulent representations by the brokers concerning Alside's financial position, with the result that they eventually sold at a greater loss than would otherwise have been realized by them.

The Court held that the plaintiffs had made out a cause of action under § 10(b), stating:

> "Plaintiffs here allege that they sold their shares after they learned of the alleged fraud, and if that is the case and they suffered greater loss by reason thereof, it would follow that their loss was a consequence of the defendants' fraud. Considering the purposes underlying the Securities Exchange Act and Section 10(b) and Rule 10b–5, which are to protect investors from fraud, it follows that a seller is injured as much when he suffers a loss on the sale of securities which he has been fraudulently induced to retain as when he is fraudulently induced to sell them". 252 F.Supp. at 219.

The plaintiff's reliance upon this language to support her position that a fraudulently induced retention of shares states a cause of action under 10(b) is unwarranted. A crucial fact in Stockwell was that there was an eventual sale of stock, and the case centered around

whether the alleged misrepresentations were the proximate cause of any loss suffered by the plaintiffs. In addition, *Stockwell* involved a calculated and deliberate effort to induce the plaintiff, by express affirmative fraudulent misrepresentations, to retain his stock, whereas in the present case there is alleged a mere non-disclosure of adverse financial circumstances which were not directly intended to inhibit the sale of stock. Thus, the fraud in *Stockwell* was directly connected with the purchase or sale of securities, and not, as here, indirectly connected through the medium of corporate mismanagement.

Cases which have a closer factual similarity to the present case are Iroquois Industries, Inc. v. Syracuse China Corp., 417 F.2d 963 (2d Cir. 1969) and Hirsh v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 311 F.Supp. 1283 (S.D.N.Y.1970).

In *Iroquois*, the plaintiffs sought to acquire, by means of a tender offer, working control of Syracuse. Defendant's management, as part of its successful tactics in resisting the tender offer, made fraudulent statements to their stockholders to induce them to refrain from accepting plaintiff's offer. On these facts, the Court held that no 10(b) action could be maintained as there was no purchaser or seller of securities.

In *Hirsh*, the complaint alleged that a brokerage firm and a group of tippees had wrongfully misused inside information concerning a sharp drop in the earnings of McDonnell Douglas Corp., ("Douglas") by selling Douglas stock without disclosing the drop in earnings to other Douglas stockholders. Even though plaintiff was not one of the stockholders who had purchased stock from the defendants by reason of the alleged wrongful non-disclosure, plaintiff brought an action against defendants on behalf of all other persons who were stockholders of Douglas at the time of alleged non-disclosure.

Because the plaintiff had not purchased or sold stock as a result of the alleged wrongful conduct, it was held that the deception was not the factual cause of plaintiff's injury and in no way prevented him from selling his Douglas shares in the market during the period of deception. The Court stated that "had defendants not engaged in alleged activity violative of the Securities Act, plaintiff would still have suffered its monetary loss". 311 F.Supp. at 1289.

*Iroquois* was compared as follows:

"Iroquois' status was one of an aborted purchaser; were it not for defendant's fraudulent representations, it would have purchased shares. Its position is thus similar to plaintiff Hirsh, in that Hirsh alleges he would have sold his shares of Douglas had defendants not failed to disclose Douglas' poor financial condition . . . . The aborted purchaser-seller rule has not been defined as satisfying the Birnbaum rule . . . ." 311 F.Supp. at 1287, N. 6.

A recent case dealing with the applicability of the purchaser-seller rule is Superintendent of Insurance of New York v. Bankers Life and Casualty Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128, (1971). There, Bankers Life agreed to sell all of the stock of Manhattan Casualty Company, a wholly owned subsidiary, to one Begole for $5,000,000. Following the closing, but on the same day, United States Treasury Bonds from Manhattan's portfolio were sold and the proceeds, along with enough cash to bring the total to $5,000,000, were credited to a bank account in the name of Manhattan. Then a check was drawn against this account to pay for the Manhattan stock. As a result of these transactions, Bankers Life had received $5,000,000 in exchange for the Manhattan stock, Begole and others owned the stock, and Manhattan's assets had been reduced by $5,000,000.

On the basis of these facts, Manhattan, represented by New York's Superintendent of Insurance, brought an action claiming violation of § 10(b). Mr. Justice Douglas, writing for the Court, reaffirmed that § 10(b) does not "regulate

transactions which comprise no more than internal corporate mismanagement," but went on to note that in this case there was a sale of securities (the bond sale) and that § 10(b) bars "deceptive devices and contrivances in the purchase and sale of securities whether conducted in the organized markets or face-to-face". 404 U.S. at 12, 92 S.Ct. at 169.

It thus becomes apparent that the purchaser-seller rule must be complied with. The continued vitality of the Rule has been recently reaffirmed by the Second Circuit Court of Appeals in Drachman v. Harvey, 453 F.2d 722 (2d Cir. 1971). Recent cases in other Circuits which have followed the *Birnbaum* rule include, inter alia, Herpich v. Wallace, 430 F.2d 792 (5th Cir. 1970); Erling v. Powell, 429 F.2d 795 (8th Cir. 1970). See also, Vanderboom v. Sexton, 422 F. 2d 1233 (8th Cir. 1970).

Though much criticized, Entel v. Allen, supra, and distinguished ("forced sellers", Vine v. Beneficial Finance Co., 374 F.2d 627 (2d Cir. 1967), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L. Ed.2d 460 (1967); "aborted sellers", Voege v. American Sumatra Tobacco Corp., 241 F.Supp. 369 (D.Del.1965) and M. L. Lee & Company v. American Cardboard & Packaging Corp., 36 F.R.D. 27 (E.D.Pa.1964); "merger", SEC v. National Securities, Inc., 393 U.S. 453, 467–468, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969); "injunction", Mutual Shares v. Genesco, supra, the *Birnbaum* rule still stands.

We feel that the massive weight of authority cited above "comprise an impressive list and we would be loathe to oppose them". Frohmann v. United States, 380 F.2d 832, 836 (8th Cir. 1967). See, United States v. Jaskiewicz, 278 F.Supp. 525 (E.D.Pa.1968).

In summary, the plaintiff has not demonstrated to the satisfaction of this Court that there has been any fraud "in connection with the purchase or sale of any security", and thus there is no standing to maintain an action under

Section 10(b) or Rule 10B–5. Rather, the plaintiff's remedy for the alleged "fraudulent mismanagement of corporate affairs", Birnbaum v. Newport Steel Corp., supra, 193 F.2d at 464, lies in the State Courts.

### ALLEGED SECTION 14(a) VIOLATION

The plaintiff's complaint alleges a violation of Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) because of the issuance of a false and misleading proxy statement.

Section 14(a) provides:

"It shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section [12] of this title".

Therefore, we must read section 12 of the Act, 15 U.S.C. § 78*l*, to find out to whom section 14(a) relates.

There are two kinds of registrations provided for in § 12. They are: (a) registration on a national securities exchange under section 12(b), 15 U.S.C. § 78*l*(b); and (b) registration with the SEC under section 12(g), 15 U.S.C. § 78*l*(g). The first of these two types of registration may be ignored, since City Bank's stock has never been registered on a national securities exchange. The second type of registration, set out in § 12(g), requires registration when certain requirements are met, one of which is having a class of equity security held of record by five hundred or more persons.

The Court has in its possession the uncontradicted affidavit of Ralph E. Cades, as one of City Bank's founders,

as one of City Bank's directors, and as City Bank's acting President during the latter few months of its existence, which states that the total number of City Bank's stockholders was always less than 500. It thus becomes apparent that City Bank never had any obligation to register its stock with the S.E.C., and thus the provisions of § 14(a) are inapplicable.

In summary, we hold that the plaintiff has not stated a cause of action under either § 10(b) or § 14(a). The plaintiff has also filed two claims based on state law, but in light of the fact that we must dismiss the federal claims, the state claims should be dismissed as well. United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly, the defendants' motion for summary judgment is granted.