**Forrest MURPHY et al.**

v.

**Leonard LANDSBURG, Individually and as Trustee of the Estate of Adolph L. Tafel, Deceased, et al.**

**Civ. A. No. 72–278.**

United States District Court,
E. D. Pennsylvania.

Jan. 30, 1973.

Victor Wright, Philadelphia, Pa., for plaintiffs.

J. Stokes Adams, James Francis Lawler, Philadelphia, Pa., for defendants.

MEMORANDUM OPINION

BECHTLE, District Judge.

The four members of the partnership, Utah Oil Land Company, bring the action here involved seeking a variety of relief against four defendants.[1] The complaint is in six counts. Under the first two and the last two counts, the partnership seeks damages from Leonard Landsburg, individually and as Trustee of the Estate of Adolph L. Tafel, deceased. Counts I and II are for breach of an alleged contract between the partnership and the trustee; Counts V and VI are for the trustee's alleged violation of the Federal securities antifraud statutes and SEC Regulation 10b-5. The prayer for relief in each of Counts I and II has been amended by stipulation to include a request that the trustee be ordered to sell and transfer to the partnership the 750 shares of Boericke and Tafel, Inc. ("B & T"), stock held by him as trustee, in accordance with the terms of the alleged contract between him and the partnership. The remaining counts, Counts III and IV, seek damages from the other three defendants (B & T; Donald Lee, president and director of B & T; and Gustav H. Tafel, Jr., a director of B & T) for asserted malicious interference with the contractual relationship between the partnership and the trustee for the sale of the 750 shares of B & T stock.[2] The partnership also asks for a declaration that B & T be deemed trustee *ex maleficio* of the 750 shares "obtained" from the trustee of the estate and be required to make restitution to the partnership. B & T has filed a counterclaim averring that the partnership and its members, by soliciting the sale of the 750 shares from the majority stockholder and by institution of this action to enforce the contract for the sale of the shares, are attempting to monopolize commerce among the several states in homeopathic pharmaceuticals in violation of the Sherman and Clayton Antitrust Acts.

Trustee Landsburg has moved for summary judgment in his favor seeking dismissal of Counts I, II, V and VI of the complaint. In response, the partnership has filed a cross-motion for summary judgment under those counts and for similar relief against the other three defendants under Counts III and IV. The partnership has also filed its motion for summary judgment seeking dismissal of B & T's counterclaim, which avers the antitrust violations. The three other defendants have cross-motioned for summary judgment as to the partnership's claim against them. These motions are now before me for determination.

I. PLAINTIFFS' AND TRUSTEE'S CROSS-MOTION FOR SUMMARY JUDGMENT UNDER COUNTS I AND II

▮ The basis for the partnership's claim for breach of contract is that the trustee, by letter dated July 9, 1971 (Complaint, Exhibit "B"), accepted its offer of a few days earlier to buy all of the 1,365 outstanding shares of B & T common stock by agreeing to sell 750 shares held by him. This is set forth in Count I. Alternatively, it alleges in Count II that, if the letter of July 9 be considered a counteroffer, it was accepted by the partnership as evidenced by the partnership's letter (Complaint, Exhibit "D") of December 3, 1971.

The testimony in the depositions of the trustee's attorney raises considerable doubt whether a contract was entered

---

1. United States District Judge Charles R. Weiner, in a Memorandum Opinion and Order filed in this case on May 12, 1972, denied the partnership's action for a preliminary injunction and granted the partnership's motion to dismiss a counterclaim asserted by the trustee Leonard Landsburg.

2. The directors of B & T are four in number. The trustee and his brother are the other two. The brother was not named as a defendant.

into for the sale of the 750 shares under either theory. In addition, on three separate occasions, the partnership extended by letter the effective date of its offer submitted July 7, 1971, to give the minority stockholders an opportunity to act on the offer, the last extension date being December 1, 1971, for that purpose. Nevertheless, assuming that there was a sale, the trustee's letter of July 9, whether it be construed as an "acceptance" or a "counteroffer," contained an indispensable condition that it was "subject only to the approval of the Orphans' Court." Either the partnership or the trustee could have sought that approval, as the burden of seeking such action was not restricted to only one of them. Before Orphans' Court approval was sought and pursuant to a request for bids (containing a like condition for Orphans' Court approval), B & T submitted a bid to purchase the 750 shares, which the trustee accepted because he believed that it was better than the offer made by the plaintiff partnership.

United States District Court Judge Charles R. Weiner, of this Court, rendered a decision on certain other preliminary matters heretofore and, in his Memorandum Opinion of May 12, 1972, he stated:

"On January 4, 1972, a hearing was held before the Orphans' Court on the petition of [the trustee]. The petition referred to both sales and requested that the sale to B & T be approved. The Court approved this request on the basis that the proposed sale to B & T was at a substantially higher price than that provided for in [the partnership's] contract . . . ."

Since the sale to the partnership has not been approved by the Orphans' Court, an important condition precedent to consummation of the sale has not been met. Therefore, the partnership is not entitled to recover damages from trustee Landsburg, in his official or individual capacity, nor can specific performance be decreed. Accordingly, trustee Lands-

burg is entitled to judgment dismissing the action under Counts I and II.

In considering plaintiffs' cross-motion for summary judgment of these counts, one other observation is pertinent. Even if I were to rule that the sale did not require the approval of the Orphans' Court, the partnership could still not prevail at this time since it must meet, and indeed ultimately overcome, B & T's counterclaim that the acquisition or attempted acquisition of the 750 shares of stock would be a violation of the antitrust laws. Only after this occurrence would plaintiffs be given consideration to any entitlement for relief based on a breach of contract.

## II. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT SEEKING DISMISSAL OF B & T's COUNTERCLAIM

■ The partnership's motion for summary judgment seeking dismissal of B & T's counterclaim must be denied. Paragraphs 29, 30, 31 and 32 of B & T's answer to the complaint aver as follows:

"29. Defendant B & T is exclusively engaged in the business of manufacturing and selling homeopathic pharmaceutical products and in publishing literature with respect thereto. It is one of the major producers of such pharmaceuticals in the United States.

"30. Wise K. C. Pharmical Company (Wise), Layties Pharmical Company (Layties), Walker Pharmical Company (Walker), New Era Labs, Limited (New Era), and Inland Alkaloid Company (Inland) are all companies engaged in the manufacture and sale of homeopathic products in the United States.

"31. Plaintiff Forrest Murphy is President and Director of Wise, Layties, Walker and New Era, is a Director of Inland, and is an officer of other concerns engaged in the homeopathic pharmaceuticals industry.

"32. Each of the individual plaintiffs has an economic interest in Wise, Lay-

ties, Walker and New Era, Inland and other concerns engaged in the homeopathic pharmaceutical industry and, together, they are the controlling stockholders thereof."

The partnership does not dispute the allegations of paragraph 29, and the deposition of Forrest Murphy, one of the members of the partnership, supports the allegations of the remaining three paragraphs. Thus, the offer of the partnership to buy the majority shares of outstanding B & T stock may have violated the antitrust laws. Although I have ruled that the partnership is not entitled to damages for breach of contract or for specific performance, the offer and the proceedings to enforce the transfer of the 750 shares may have prevented B & T from carrying on a more aggressive business and, thus, decreased its profits. If B & T can prove the antitrust violation, it should be given an opportunity to show that its profits were less than they would have been but for the partnership's action.

## III. TRUSTEE'S MOTION AND PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT UNDER COUNTS V AND VI

The plaintiff partnership avers in Counts V and VI that the trustee Landsburg, using the facilities of interstate commerce, employed a fraudulent scheme to deceive the partnership to enter into negotiations with him to buy 750 shares of B & T stock in order to induce B & T to purchase the same stock at a price higher than that which the partnership had agreed to pay and to thereby profit at the partnership's expense.[3] It has been held in this district that a plaintiff seeking to recover damages pursuant to § 10(b) of the 1934 Act and SEC Rule 10b–5 must es-

tablish that he has suffered injury as a result of deceptive practices in connection with his purchase or sale of securities. In re Penn Central Securities Litigation, 347 F.Supp. 1327, 1333–1334 (E.D.Pa.1972)—where some of the plaintiffs acquired stock in a Penn Central Company before and held it throughout defendants' alleged illegal activity; Edelman v. Decker, 337 F. Supp. 582, 587 (E.D.Pa.1972)—where a plaintiff held shares of stock of a bank and decided not to sell them pursuant to statements in proxy material which he later learned were misleading. But see Commerce Reporting Co. v. Puretec, Inc., 290 F.Supp. 715 (S.D.N.Y.1968)— where the allegations in a complaint resemble more closely those under Counts V and VI of the complaint in the action before me. The court ruled that it is unnecessary to allege a consummated purchase or sale of securities as a condition to maintaining an action under § 10(b) and Rule 10b–5. And, in the case of Kahan v. Rosenstiel, 424 F.2d 161, 173 (C.A.3, 1970),[4] where Circuit Judge Adams, speaking for the Court, said regarding adherence to a strict purchase-seller requirement: "The [1934] Act was designed to eliminate deceptive and unfair practices in security trading and to protect the public from inaccurate, incomplete and misleading information. The thrust of the Act and the decisions interpreting it is to give the investing public the opportunity to make knowing and intelligent decisions regarding the purchase or sale of securities. A suit which seeks to enjoin deceptive practices which if continued would *lead to* completed purchases or sales that give rise to a cause of action under § 10(b) is not inconsistent with this policy and will in fact promote free and open public securities markets." (Emphasis added.)[5]

3. At this point, it should be noted that B & T has not filed a cross-claim against the trustee.

4. Cert. denied sub nom. Glen Alden Corp. v. Kahan, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970).

5. Here the partnership does not seek to enjoin any deceptive practices but asks that the trustee be required to sell and transfer the 750 shares to it.

However, I need not decide whether the partnership may invoke the provisions of § 10(b) and Rule 10b–5. The partnership has not intimated that it will be at a disadvantage by relying on state law rather than Federal. This Court has jurisdiction over the subject matter by reason of diversity and amount in controversy; all the parties involved are before the Court and there would have been no necessity to resort to § 27 of the 1934 Act to obtain personal jurisdiction over defendants. Whether or not the partnership proceeds under Federal or state law, there is a genuine issue of fact as to the claim under these counts and the motions of the respective parties under them will be denied.

IV. MOTION OF PLAINTIFFS AND DEFENDANTS LEE, TAFEL AND B & T FOR SUMMARY JUDGMENT UNDER COUNTS III AND IV

■ As mentioned earlier, the partnership seeks damages against the other three defendants (B & T, Lee and Tafel) for malicious interference of the contractual relationship between it and the trustee for the sale of the 750 shares. The act constituting the alleged wrongful interference is the letter (Complaint, Exhibit "G"), dated December 13, 1971, and containing the higher bid for the 750 shares, sent to the trustee by B & T. This claim is made on the assumption that the trustee's dealings with the partnership were bona fide. Pennsylvania recognizes the tort, as stated in § 766 of the Restatement of Torts (1939 Ed.) of interference with a contractual relationship or with a prospective contractual relationship. *See,* Glenn v. Point Park College, 441 Pa. 474, 272 A.2d 895 (1971). In addition to the heavy burden placed upon the partnership of establishing this tort (Barlow v. Brunswick Corporation, 311 F.Supp. 209 (E.D.Pa., 1970)), which it has not met up to this point, it must meet and overcome the antitrust counterclaim asserted against it

by defendant B & T. The partnership is not entitled to summary judgment under Counts III and IV.

The basis for the motion of B & T, Lee and Tafel is that, even assuming a valid enforceable contract between the partnership and trustee, they were privileged to submit the higher bid. They say in their brief and not by way of affidavit that, except for the trustee's 750 shares, all of the remaining stock of B & T was held by the Tafel family and has been so held for a number of years and that the two directors, not knowing who had been invited to bid for the 750 shares, felt obliged to submit a bid to protect the economic interest of the family stockholders and the corporation itself. Whether they were privileged under the circumstances is a question of fact. The partnership must be given an opportunity, at least, to show that they were not privileged. The motion of B & T, Lee and Tafel for summary judgment under this heading will also be denied.

V. PLAINTIFFS' MOTION THAT B & T BE DECLARED A TRUSTEE EX MALEFICIO

■ The partnership's request that B & T be declared a trustee *ex maleficio* in its favor will be denied. A trust *"ex maleficio"* is another expression for a constructive trust. 38 P.L.E. Trusts, § 101. A constructive trust will be declared by the Pennsylvania courts "where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." Gray v. Leibert et al., 357 Pa. 130, 135, 53 A.2d 132, 135 (1947). Also see Truver v. Kennedy, 425 Pa. 294, 229 A.2d 468 (1967). The burden of establishing the existence of facts upon which a constructive trust will be declared is on the one who seeks such a declaration. In re Haftman's Estate, 30 Pa.Dist. & Co.R.2d 4 (C.P. Wash.Co.1962). Beyond those facts alleged in support of the contractual-rela-

tions-interference claim, there are no facts of record to support the request that B & T be declared a trustee *"ex maleficio"* of title to the 750 shares for the benefit of the partnership. Ordinarily, the redress for the contractual-interference claim is the award of damages for the deprivation of the advantage or the benefit which the plaintiffs would have gained under the contract. I see no valid reason at this juncture for departing from that form of redress. In any event, the partnership has not met its burden regarding the interference claim.

Accordingly, the motion of defendant Landsburg for summary judgment of dismissal of the claims under Counts I and II of the complaint will be granted; all the other motions will be denied.

### ORDER

And now, to wit, this 30th day of January, 1973, it is ORDERED as follows:

(1) *Under Counts I and II of the Complaint,* (a) the motion of defendant Leonard Landsburg for summary judgment of dismissal is *granted;* (b) the motion of plaintiffs for summary judgment in their favor is *denied;*

(2) *Under Counts III and IV,* (a) both the motion of defendants Boericke & Tafel, Inc., Donald Lee and Gustav H. Tafel, Jr., for summary judgment of dismissal and that of plaintiffs for summary judgment in their favor are *denied;* (b) the motion of plaintiffs for summary judgment of dismissal of the counterclaim of defendants Boericke & Tafel, Inc., Donald Lee and Gustav H. Tafel, Jr., is *denied;*

(3) *Under Counts V and VI,* both the motion of defendant Leonard Landsburg for summary judgment of dismissal and that of the plaintiffs for summary judgment in their favor are *denied;* and

(4) Plaintiffs' motion that defendant Boericke & Tafel, Inc., be declared a trustee *ex maleficio* as to the 750 shares of stock is *denied.*

United States District Court, S. D. New York.