[No. 24579. Department Two. August 17, 1933.]

CRESCENT MANUFACTURING COMPANY, *Respondent*, v. NIELS HANSEN, *Appellant*, MODERN FOOD STORES, INC., *et al.*, *Defendants*.[1]

*Oscar A. Zabel*, for appellant.

*Bronson, Jones & Bronson* and *Story Birdseye*, for respondent.

STEINERT, J.—This is an action to recover for merchandise sold and delivered. Recovery was sought against defendant Modern Food Stores, Inc., on the ground that it had purchased and received the goods, but had not paid for them. Recovery was also sought against the other two defendants on the ground that they had issued a false financial statement concerning the assets and liabilities of Modern Food Stores, Inc., and that plaintiff, relying on such statement, had extended credit to the food stores company. Defendant Kuehl defaulted. Issues having been joined between

[1] Reported in 24 P. (2d) 604.

plaintiff and the remaining defendants, trial was had before the court and jury, resulting in a verdict for plaintiff. Motion for new trial being overruled, judgment was entered, from which defendant Hansen alone has appealed.

The facts, so far as they are undisputed, are these: For some time prior to 1926, appellant, Niels Hansen, and his wife were the sole stockholders of Niels Hansen Manufacturing Company, a corporation engaged in the manufacture and sale of store fixtures, and of which Niels Hansen was president. In 1926, Mr. Hansen conceived the idea of establishing a model grocery store, equipped with fixtures manufactured and installed by the Niels Hansen Manufacturing Company, and to include a complete bake-shop, cold-storage plant, delicatessen and various departments for purveying groceries, meats, vegetables and fruits. The store was to be a model for others to be located in various community centers. For this purpose, Modern Food Stores, Inc., was organized and incorporated. Mr. Hansen took eight thousand of the ten thousand shares of common stock, and became a trustee and the vice-president of the company. Defendant Kuehl, an experienced groceryman, was induced by Mr. Hansen to take two thousand shares of common stock and become a trustee and the general manager of the company. The company was also authorized to issue ten thousand shares of preferred stock, which were to be sold to prospective purchasers.

Mr. Hansen devoted most of his time to the affairs of Niels Hansen Manufacturing Company, leaving to Mr. Kuehl the management and care of the Modern Food Stores, Inc. Being vitally interested in the success of the latter company, however, Mr. Hansen visited the store daily and kept in close touch with its

affairs and with Mr. Kuehl, either by personal contact or else through his agent, Mr. Loyal A. Partridge.

The business expanded until, in the early part of 1928, the Modern Food Stores, Inc., had eight stores, all equipped as model stores with fixtures purchased from Niels Hansen Manufacturing Company under conditional sales contracts. During this period of expansion, it was necessary for the new company to issue financial statements from time to time, for the information of prospective purchasers of preferred stock and also for the purpose of obtaining credit from various wholesale houses. Mr. Kuehl was contacted by certain mercantile agencies, and periodically supplied them with the information on which the customary statements were made and circulated. In January, 1928, he gave the Bradstreet Company the following financial statement:

"Assets
| "Cash in bank | $2,147.00 |
| "Cash on hand | 500.00 |
| "Merchandise | 7,000.00 |
| "Machinery and fixtures | 16,750.00 |
| "Total | $26,397.00 |

"Liabilities
| "Capital stock paid in | $10,000.00 |
| "Accounts payable | 1,250.00 |
| "Insurance on merchandise and fixtures at 555 Aloha St., with $1,500.00 insurance at branch locations on each. The fixtures at 555 Aloha St. are valued at $9,250.00, and at branch locations at $1,500.00 each. | 6,500.00 |

(Signed) Modern Food Stores,
"H. A. Kuehl."

From about November 11, 1926, the respondent, Crescent Manufacturing Company, which is engaged

in a wholesale business, had been selling merchandise to Modern Food Stores, Inc., on credit. The Crescent Manufacturing Company was a subscriber to the Bradstreet service, and received a copy of the foregoing statement sometime in February, 1928. At that time, the Modern Food Stores, Inc., was indebted to it in the sum of about two hundred and ninety dollars, and was considered slow pay. After receipt of the copy of the financial statement, the Crescent Manufacturing Company continued to sell and deliver merchandise to the food stores company on credit. Although the financial statement showed the machinery and fixtures, valued at $16,750, as an asset, the actual fact of the matter was that title to the property was in Niels Hansen Manufacturing Company under the conditional sales contracts. There was at that time a balance of about $15,000 still owing on the fixtures, of which amount $1,440 was past due.

In July, 1928, Modern Food Stores, Inc., made an assignment to Seattle Association of Credit Men, for the benefit of creditors. At that time, the company was indebted to the Crescent Manufacturing Company in the sum of $428.23. After the assignment was made, the Niels Hansen Manufacturing Company asserted its title to the fixtures under its conditional sales contracts, and its claim was recognized by the assignee. The Crescent Manufacturing Company received upon its claim a dividend of $85.64, leaving a balance of $342.59 still due and owing, for which this action was begun.

The principal dispute in the evidence is on the question whether appellant Hansen in any way participated in the issuance of the above financial statement, or had any knowledge of it, or was bound by it in such a way as to render him individually liable for the loss sus-

tained by respondent. The evidence upon that issue was in sharp conflict.

Respondent's evidence was to the effect that Hansen was fully conversant with all the affairs of Modern Food Stores, Inc.; that he knew that financial statements were being periodically issued, and thoroughly understood the necessity and purpose of their issuance; that he also knew that, in these statements, the fixtures were being listed as an asset, free and clear of encumbrance; further, that there was a tentative agreement between him and the food stores company and Mr. Kuehl that the fixtures constituted his, Hansen's, part of the investment in the company, and that the conditional sales contracts were to be released so as not to appear as a liability against the company; and finally, that he fully acquiesced in, and approved the issuance of, the statements in that form. There was further evidence on the part of the respondent that Mr. Hansen used the conditional sales contracts from time to time to procure credit for the Niels Hansen Manufacturing Company, and himself supplied the money to pay the installments as they became due, so that they would not appear to be delinquent.

On the other hand, Mr. Hansen, who was the only witness in his behalf, testified that he was never consulted about this particular financial statement, and knew nothing whatever about it or its issuance. He further testified on direct examination that the Modern Food Stores, Inc., was to pay for the fixtures as soon as it had the money and was on a paying basis. On cross-examination, he testified that, on January 1, 1928, the matter of the conditional sales contracts was rearranged, and that the food stores company was released from all payments thereon except the delinquent installments then amounting to $1,440; so that, had the food stores company paid that amount at that

time, it would have received a clear title to the fixtures.

The sole question presented upon this appeal is whether there was sufficient evidence to support the verdict against the appellant.

■ It is the established rule that officers and stockholders of a corporation who participate in, or authorize, the issuance of false statements concerning the financial condition of the corporation, are liable to persons who, relying upon such statements, sustain loss. 3 Fletcher, Cyc. Corporations (Permanent Ed.), § 1146, p. 570 *et seq.; Barnard Mfg. Co. v. Ralston Milling Co.,* 71 Wash. 659, 129 Pac. 389; *Pacific Fruit & Produce Co. v. Modern Food Stores,* 158 Wash. 212, 290 Pac. 859. It is also the rule that, to hold an officer or trustee of a corporation liable for the issuance of a false statement, it is not necessary that he personally make the statement, but that it is sufficient if he sanctions or approves it. 3 Fletcher, Cyc. Corporations (Permanent Ed.), § 1150, p. 586 *et seq.*

Whether Mr. Hansen participated in, or knew of, the issuance of the particular statement, or approved or sanctioned it, were questions for the jury to determine. There was ample evidence, we think, on which the jury could find against him on one or more of those questions, and the verdict indicates that it did so. On the motion for new trial, there was squarely presented to the trial court the question whether the evidence was sufficient to support the verdict. In the exercise of its discretion, the court overruled the motion and allowed the verdict to stand.

■ Appellant contends that the evidence was not of that clear, cogent and convincing character necessary to establish fraud, and that therefore no case was made for the jury. There is a clear distinction between the powers and duties of an appellate court and those

of a trial court respecting the determination of the question of the sufficiency of evidence to support a verdict or other decision of fact. Undoubtedly, an appellate court may set aside a verdict which is wholly unsupported by the evidence or which is so clearly against the evidence that it could not have been reached by any fair and intelligent man. But the appellate court may not review the evidence merely to determine its preponderance or weight.

Whether or not a new trial should be granted because of insufficiency of the evidence is addressed to the sound discretion of the trial court, and the ruling thereon will not be disturbed except for manifest abuse of discretion. It is for the jury in the first instance, and for the trial court in the final instance, to say whether the evidence satisfies legal standards as to degree of proof. Hayne, New Trial and Appeal (Rev. Ed.), § 288, p. 1639. 7 Bancroft's Code, Practice and Remedies, §§ 6043-4; *State v. Roberts,* 165 Wash. 263, 4 P. (2d) 1109, and cases therein cited. It is also the rule in this state that, where the evidence is conflicting, it is for the jury to determine whether the evidence adduced is, in fact, clear and convincing. *Mattson v. Eureka Cedar Lumber & Shingle Co.,* 79 Wash. 266, 272, 140 Pac. 377.

Unless, therefore, we can say that there is no substantial evidence in support of the verdict, or that the trial court has clearly abused its discretion in failing to grant a motion for new trial, we are not at liberty to interfere with the verdict or with the judgment based thereon. Our examination of the record in the case leads us to the conclusion that we can not in this instance make either of those assertions.

The judgment is affirmed.

BEALS, C. J., MAIN, TOLMAN, and BLAKE, JJ., concur.