**Vernon A. STOCKWELL, Plaintiff,**

v.

**REYNOLDS & CO. and Ralph E. Carpenter, Defendants.**

**James ARNEIL, Plaintiff,**

v.

**REYNOLDS & CO. and Ralph E. Carpenter, Defendants.**

United States District Court
S. D. New York.

Sept. 22, 1965.

Webster, Sheffield, Fleischmann, Hitchcock & Chrystie, New York City, for plaintiffs; Donald J. Cohn, Henry B. Cortesi, New York City, of counsel.

Townsend & Lewis, New York City, for defendants; Richard J. Cutler, Michael A. Berch, New York City, of counsel.

BONSAL, District Judge.

Defendants in the above actions have moved, pursuant to Rule 12(b) (1) of the Federal Rules of Civil Procedure, for orders dismissing the complaints for lack of subject matter jurisdiction and have moved for other relief. Since both motions involve the same questions, they are treated together.

The plaintiffs in each action are citizens of the State of Washington. The defendants in each action are, Reynolds & Co., a New York partnership engaged in the stock brokerage business, and Ralph E. Carpenter, a citizen of the State of New York and a partner of the defendant Reynolds & Co., and during all times relevant to the action a director of Alside, Inc. (Alside), the stock of which is listed on the New York Stock Exchange.

Both plaintiffs maintained securities brokerage accounts with defendant Reynolds & Co. from January 1963 to August 1964. Plaintiffs' actions are based on alleged misrepresentation of material facts and failure to disclose material facts on the part of the defendants, as a consequence of which the plaintiffs were induced to retain their shares in Alside when they desired to sell them, and in the case of the plaintiff Arneil, that he was induced to purchase additional shares of Alside.

The two complaints are similar, each containing five counts—three against both defendants and two against the defendant Carpenter alone. The first count charges defendants with violating Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C § 78j) and Rule 10b–5 promulgated thereunder. The second count charges common law fraud, and the third count common law negligence. The fourth count repeats the charge of violation of Section 10(b) and Rule 10b–5 by defendant Carpenter alone, and the fifth count charges Carpenter with breach of his fiduciary duty as a director of Alside.

The defendants in both actions have moved, pursuant to Rule 12(b) (1) of the Federal Rules of Civil Procedure, to dismiss Counts I and IV of the Stockwell complaint and so much of Counts I and IV of the Arneil complaint as are based on the retention of the plaintiffs' Alside shares, for lack of subject matter jurisdiction. Defendants further move, pursuant to Rule 12(b) (6), for an order dismissing both complaints for failure to state a claim upon which relief can be granted. Defendants further move for an order directing that the matters alleged in Counts II, III and V be submitted to arbitration pursuant to the arbitration clause in the Customer's Agreements executed by defendant Reynolds & Co. with each of the plaintiffs. Finally, as an alternative prayer for relief, the defendants move, pursuant to Rule 12(e) and 12(f) for an order to strike certain allegations of each complaint and to make the complaint more definite and certain.

For the purposes of these motions, the factual allegations of the complaints are to be taken as true, and the complaints may not be dismissed unless it is clear from the complaints that the plaintiffs are not entitled to any relief. Arfons v. E. I. DuPont De Nemours & Co., 261 F.2d 434 (2d Cir. 1958); Dioguardi v. Durning, 139 F.2d 774 (2d Cir. 1944); Cochran v. Channing Corp., 211 F.Supp. 239 (E.D.N.Y.1962); 2 Moore, Federal Practice ¶12.08, pp. 2244–45 (2d ed. 1964).

The complaints allege that each plaintiff opened a securities brokerage account with defendant Reynolds & Co. in or about January 1963, and that each plaintiff was informed at the time that defendant Carpenter was a director of Alside and that they would be kept fully informed of any circumstances which would affect the price of Alside stock. By August of 1963 Reynolds & Co. held 3,900 shares of Alside for plaintiff Stockwell's account, and by September 1963, 600 shares for plaintiff Arneil's account. Plaintiffs' Alside shares were purchased through defendant Reynolds & Co., with the exception of 1,400 shares held by plaintiff Stockwell (only plaintiff Stockwell alleges that he purchased his Alside shares on the basis of representations made by defendant Reynolds & Co.).

It is alleged that in September 1963 each plaintiff told the defendants that he wished to sell his Alside shares, and that defendants advised the plaintiffs not to sell their shares but, indeed, to purchase more shares, this advice being based on the fact that defendant Carpenter was a director of Alside and was thus in a position to know the financial condition of the company. Defendants are charged with representing to the plaintiffs: (a) that the decline in the price of Alside shares was caused by specialized selling and was not due to any financial or business problems of the company; (b) that it was time to buy Alside shares; (c) that defendant Reynolds & Co. would issue in the near future an institutional report concerning Alside; (d) that the financial condition and business situation of Alside assured the rise in price of Alside shares; and (e) that Alside, through its divisions and subsidiaries, was entering into the business of "producing houses and financing the sales thereof," and that, as a result of this new venture, Alside's earnings would be materially increased and the price of the shares would rise. Plaintiffs allege that the defendants knew, or should have known, that each of the foregoing representations was false or, alternatively (Count III), that they were made negligently. Each complaint also alleges that the defendant Carpenter failed to disclose the true facts concerning Alside, namely, that Alside and its home division or subsidiary was experiencing substantial financial difficulties. Each complaint alleges that the defendants made these representations in order to induce the plaintiff to retain his Alside stock and, in the case of plaintiff Arneil, to purchase additional shares. Both plaintiffs allege that they believed and relied on the representations in not selling their shares at the time and, in the case of plaintiff Arneil, in purchasing additional shares. The price of Alside shares thereafter declined, but it is alleged that the defendants, by means of the same representations, dissuaded the plaintiffs from selling until about February of 1964 when each plaintiff alleges he learned of the falsity of the representations and later sold his shares at a loss.

The issues presented by the motions are: first, whether Counts I and IV of each complaint state a cause of action under Section 10(b) of the Securities Exchange Act of 1934 and under Rule 10b–5 issued thereunder; second, whether the provisions of the Customer's Agreement executed by the defendant Reynolds & Co. with each of the plaintiffs require that the controversy alleged in Counts II, III and V be submitted to arbitration; and third, whether any matters contained in the complaints which are found not to be arbitrable state a cause of action. Counts I and IV of each complaint charge violations by the defendants of Section 10(b) of the Securities Exchange Act of 1934 and of Rule 10b–5 promulgated

thereunder.[1] Defendants urge that Section 10(b) and Rule 10b–5 are not applicable because the alleged fraud was not "in connection with the purchase or sale of any security." At most, according to the defendants, the alleged misrepresentations and reliance thereon induced the plaintiffs to hold their Alside shares, and although they later sold their shares after discovering the alleged fraud, the sale was in no way connected with the alleged fraud. The plaintiffs, on the other hand, argue that the subsequent sale at a loss was directly connected with the alleged fraud and that they can establish this at the trial.

The words "in connection with the purchase or sale of any security" contained in Section 10(b) and in Rule 10b–5 do not require that the purchase or sale immediately follow the alleged fraud. The words have been construed more liberally in order to carry out the intent of the Act, which is designed to protect investors against fraud. Cooper v. North Jersey Trust Co., 226 F.Supp. 972 (S.D. N.Y.1964); New Park Mining Co. v. Cranmer, 225 F.Supp. 261 (S.D.N.Y. 1963); Pettit v. American Stock Exchange, 217 F.Supp. 21 (S.D.N.Y.1963). If plaintiffs indeed wished to sell their Alside shares and were induced to defer the sale by the fraudulent representations of the defendants, with the result that they ultimately sold at a greater loss, it follows, under the foregoing decisions, that the fraud was in connection with the sale of securities as that term is used in Section 10(b) and Rule 10b–5. Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir. 1952), relied on by the defendants, did not involve either a purchase or sale of stock by the plaintiffs, and the court found that in such a situation no cause of action was stated under Section 10(b) or Rule 10b–5. The rationale of *Birnbaum* was that the case involved fraudulent mismanagement of corporate affairs rather than fraudulent practices in connection with the purchase or sale of securities. Similarly, in Keers and Co. v. American Steel and Pump Corp., 234 F. Supp. 201, (S.D.N.Y.1964) there was no sale or purchase of stock by the plaintiffs.

Plaintiffs here allege that they sold their shares after they learned of the alleged fraud, and if that is the case and they suffered greater loss by reason thereof, it would follow that their loss was a consequence of the defendants' fraud. Considering the purposes underlying the Securities Exchange Act and Section 10(b) and Rule 10b–5, which are to protect investors from fraud, it follows that a seller is injured as much when he suffers a loss on the sale of securities which he has been fraudulently induced to retain as when he is fraudulently induced to sell them. Accordingly, for the purposes of this motion, Counts I and IV of each complaint state a cause of action under Section 10(b) and Rule 10b–5, and defendants' motions as to these counts must be denied.

---

1. Section 10(b) reads as follows:
   "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
   \*    \*    \*    \*    \*
   "(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."
   Rule 10b–5 reads:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange.
   "(a) to employ any device, scheme, or artifice to defraud,
   "(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
   "(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
   in connection with the purchase or sale of any security."

With respect to defendants' motion to compel arbitration of Counts II, III and V,[2] this is based on paragraph 14 of the Customer's Agreement executed between defendant Reynolds & Co. and each of the plaintiffs, which provides, in part, as follows:

"14. Any controversy between us arising out of or relating to this contract or the breach thereof shall be settled by arbitration, in accordance with the rules, then obtaining, of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or the American Arbitration Association, or the Arbitration Committee of the New York Stock Exchange, as I may elect. * * * "

The United States Arbitration Act (9 U.S.C. § 3) is here applicable, and must be interpreted under federal law. Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir. 1959). Under federal law, arbitration clauses are liberally construed. Saucy Susan Products, Inc. v. Allied Old English, Inc., 200 F.Supp. 724 (S.D.N.Y.1961); Robinson v. Bache & Co., 227 F.Supp. 456 (S.D.N.Y.1964). It would therefore appear that the relief sought in Counts II and III of each complaint is subject to arbitration as a controversy arising out of the plaintiffs' respective Customer's Agreements with defendant Reynolds & Co. It is noted that the relief sought in each of these counts is based on the same transactions which are the subject of the Securities Exchange Act counts, which must be determined by the court under the Wilko doctrine. There would appear to be little purpose in having both the court proceeding and the arbitration going on at the same time, and doubtless the ultimate determination by the court of Counts I and IV would have a definite bearing on the outcome of the arbitration proceedings. Accordingly, the court is not prepared to direct arbitration of Counts II and III at the present time. The order to be entered herein should provide that these counts are subject to arbitration, and that arbitration will be stayed pending final determination with respect to Counts I and IV of each complaint.

Count V is directed against the defendant Carpenter only, and alleges that his misrepresentations and non-disclosure as a director of Alside constituted a breach of the fiduciary duty which he owed to the plaintiffs. If Count V states a cause of action, it is clearly not subject to the arbitration clause in the Customer's Agreements since the liability, if any, is not that of Reynolds & Co., nor does it arise out of the Reynolds & Co. Customer's Agreement. Moreover, Count V does not state a cause of action under federal law and, for the purposes of this diversity action, is governed by the applicable law of either the State of Washington, where the plaintiffs reside, or the State of New York, where the defendants reside.[3] It would appear that under the law of either state, Count V states a cause of action. Crescent Mfg. Co. v. Hansen, 174 Wash. 193, 24 P.2d 604 (1933); Morgan v. Skiddy, 62 N.Y. 319 (1875); First Nat'l Bank of Hempstead v. Level Club, 241 App.Div. 433, 272 N.Y.S. 273 (1934). Defendant Carpenter urges that as a director of Alside he was under a legal duty not to disclose to the plaintiffs any inside information which might have been ac-

---

2. Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) precludes the application of the arbitration clause to actions under the Securities Exchange Act (Counts I and IV).

3. Under the doctrines of Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the court must ascertain the applicable state law through use of the conflicts rules of the forum. New York has adopted the so-called grouping of contacts approach as its choice of law rule in tort actions; determination of the proper law would thus involve the factual issue of which state had the strongest contacts with the cause of action. See Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1 (1963).

quired by him as a director, and that, consequently, any failure on his part to disclose the true facts to the plaintiffs cannot constitute a breach of his fiduciary duty. Assuming, arguendo, that defendant is correct, plaintiffs' complaint still states a cause of action since it alleges affirmative misrepresentations on Carpenter's part as well as non-disclosure of material facts. Accordingly, defendant Carpenter's motions to dismiss Count V of each complaint must be denied.

Finally, defendants move to strike certain allegations from the complaint, or, alternatively, to compel plaintiffs to make their complaints more definite and certain. The basis for these motions is that, according to the defendants, certain of the allegations in the complaints, taken alone, are not actionable. However, the complaints must be read as a whole, and when so read, do state causes of action for fraud and misrepresentation. Neither complaint is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, * * *." Rule 12(e), Federal Rules of Civil Procedure. Accordingly, defendants' motions to strike certain allegations from the complaints or, alternatively, to compel a more definite statement, are denied.

Defendants' motions to dismiss Counts I and IV of the Arneil complaint as are predicated on the retention of Alside shares, and defendants' motions to dismiss both complaints for failure to state a claim upon which relief can be granted, are denied.

Defendants' motions for an order directing the matters alleged in Counts II, III and V of each complaint be submitted to arbitration, are granted as to Counts II and III, and denied as to Count V, but arbitration will be stayed pending final determination by the court of Counts I and IV of each complaint.

Defendants' motions to strike certain allegations of each complaint or to require that they be made more definite and certain, are denied.

Settle order on notice.