### In re PENN CENTRAL SECURITIES LITIGATION.

**Robert E. ABERNATHY, Jr., et al.**
**v.**
**GREAT SOUTHWEST CORPORATION.**
Civ. A. No. 72–2112.

United States District Court,
E. D. Pennsylvania.
Jan. 30, 1974.

B. Thomas McElroy, Peveril O. Settle, III, White, McElroy, White & Sides, Dallas, Tex., for plaintiff.

Joseph R. Austin, Antonio Rossmann, Tuttle & Taylor, Inc., Los Angeles, Cal., Paul J. Bankes, Jr., Zink, Owens & Shinehouse, Philadelphia, Pa., for defendant.

### MEMORANDUM AND ORDER

JOSEPH S. LORD, III, Chief Judge.

Plaintiffs, all present or former minority common stockholders of defend-ant Great Southwest Corporation ("GSC"),[1] have brought this action alleging violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, as amended, and Rule 10b–5 adopted thereunder by the Securities and Exchange Commission, 17 C.F.R. 240.10b–5. In their § 10(b) claims plaintiffs seek to recover damages allegedly suffered as a result of nondisclosures and misstatements of material facts made by defendant and its directors and employees. Plaintiffs also assert a cause of action for breach of fiduciary duty under Texas common law. We have jurisdiction under § 27 of the Securities Exchange Act of 1934, 15 U. S.C. § 78aa and the doctrine of pendent jurisdiction.

Plaintiffs have moved pursuant to F. R.Civ.P. 23(c) for a determination that this action may proceed as a class action. Defendant has moved to dismiss the complaint for lack of subject-matter jurisdiction and for failure to state a claim pursuant to F.R.Civ.P. 12(b)(1) and 12(b)(6) insofar as it purports to state a cause of action on behalf of certain plaintiffs whom defendant characterizes as mere holders of GSC stock, rather than purchasers or sellers. It has also moved, pursuant to F.R.Civ.P. 12(f), to strike certain allegedly immaterial allegations and to strike the entire Second Amended Complaint for failure to comply with an order of the transfer-or court.

*Motion to Dismiss*

Certain of the named plaintiffs, whom we shall for the sake of convenience call the Abernathys, acquired their shares of GSC stock before December 12, 1968, the date of the earliest alleged misstatements and omissions which are the sub-

---

1. GSC is a Texas corporation, more than 90% of whose common stock is owned by the Pennsylvania Company, which in turn is a wholly-owned subsidiary of the Penn Central Transportation Company. Penn Central Transportation Company, itself a wholly-owned subsidiary of the Penn Central Com-pany, is currently involved in reorganization proceedings under § 77 of the Bankruptcy Act. We have this and other Penn Central Securities fraud cases for pretrial proceedings pursuant to an Order of the Judicial Panel on Multidistrict Litigation under 28 U.S.C. § 1407.

ject of this lawsuit. Defendant contends that the Abernathys sold their stock after the alleged misrepresentations had ceased and the true facts made public knowledge, and therefore they are mere holders of stock rather than purchasers or sellers. The conclusion we are asked to draw is that as holders the Abernathys lack standing to sue under § 10(b) and Rule 10b–5. Plaintiffs answer by saying that the Abernathys did ultimately sell their stock sometime in 1970 (and have so alleged in the Second Amended Complaint) and argue that if it is found that there was a causative link between defendant's misrepresentations and the Abernathys' sales, they may maintain an action under § 10(b). This, they contend, is an issue of fact which may not be resolved on a motion to dismiss.

■ In order to have standing to sue under § 10(b), a putative plaintiff must have either purchased or sold securities. This requirement, first gleaned from the words of the statute by the Second Circuit in Birnbaum v. Newport Steel Corp., 193 F.2d 461 (C.A.2, 1952), cert. denied 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), has been adopted by every circuit that has had occasion to decide the question, except for the Seventh Circuit. E. g., Landy v. Federal Deposit Insurance Corp., 486 F.2d 139 (C.A.3, 1973); Mount Clemens Industries v. Bell, 464 F.2d 339 (C.A.9, 1972); Hooper v. Mountain States Securities Corp., 282 F.2d 195 (C.A.5), cert. denied 365 U.S. 814, 81 S.Ct. 695, 5 L. Ed.2d 693 (1961). The Seventh Circuit has recently rejected the Birnbaum doctrine, holding that shareholders who neither purchased nor sold but nonetheless suffered losses are "investors" entitled to the protections of Rule 10b–5 and therefore that the absence of a purchase or sale is not a bar to the 10b–5 action. Eason v. General Motors Acceptance Corp., 490 F.2d 654 (C.A.7, 1973). To the extent that it is grounded on the assumption that the Supreme Court repu-

diated the purchaser-seller requirement in Superintendent of Insurance v. Bankers Life and Casualty Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), we disagree with the court's conclusion. The Supreme Court did not reject the purchaser-seller requirement; rather, it held that the transaction at issue was a "sale" of a security, thereby reaffirming, if only sub silentio, the Birnbaum doctrine. The Seventh Circuit is in direct conflict with the law in this circuit and in the Fifth Circuit, to which this lawsuit will be remanded upon completion of pretrial proceedings, Landy and Hooper, supra, and in the absence of Supreme Court precedent more persuasive than Bankers Life we feel bound to continue to apply the purchaser-seller limitation.

■■ The definitions of "purchase" or "sale" must be interpreted broadly and flexibly to fulfill the purposes of the 1934 Act, Bankers Life, supra, and have come to encompass many transactions that bear little overt resemblance to conventional purchases and sales. But however broadly the terms of § 10(b) and Rule 10b–5 may be construed, the Act and the Rule do not protect all who may have sustained a loss as a result of deceptive practices. Accepting as we do the limitations of the Birnbaum doctrine, a cause of action does not lie under § 10(b) and Rule 10b–5 on behalf of a person who, whatever loss he may have sustained in the value of his shares, merely held his stock throughout the period of the defendant's misrepresentations. Therefore, in order for the Abernathys to withstand this motion to dismiss, the Second Amended Complaint must disclose a possible set of facts which would make them something more than holders. We think it does not.

■ Plaintiffs do not and cannot argue that the Abernathys were 10b–5 purchasers of securities, since their GSC stock was acquired years before any of the misrepresentations occurred. The complaint itself also precludes a conclu-

sion that the Abernathys were 10b–5 sellers. The complaint alleges that several misrepresentations were made by defendant, all "affecting the investment decisions of Plaintiffs and upon which reliance was made by Plaintiffs herein in connection with their purchase or sale of securities in Defendant corporation, *except in the case of the Abernathy family, wherein reliance was made by them in connection with their holding on to securities in Defendant coroporation previously acquired through a merger \* \* \*."* Second Amended Complaint, ¶ XI. [Emphasis added.] It is alleged that the Abernathys eventually sold their GSC stock, but according to the allegations of the complaint they did so *after* public disclosure of defendant's fraud: in ¶ IV of the Second Amended Complaint plaintiffs assert that the Abernathys sold their GSC holdings for $115,000, which was "what they were able to get for their stock *after public awareness of the manifold fraud* \* \* \*."[2] Accepting the averments of the complaint as true, the inescapable conclusion to be drawn is that the Abernathys were holders of GSC securities, not purchasers or sellers, throughout the period of defendant's misrepresentations.

There is only one theory, implicit in plaintiffs' position, which could avoid this result. That theory was advanced by the plaintiffs and adopted by the court in Stockwell v. Reynolds & Co., 252 F.Supp. 215 (S.D.N.Y.1965). In Stockwell, the court denied a motion to dismiss an action brought under § 10(b) and Rule 10b–5 by plaintiffs who had sold their stock five months after learning of the defendant's fraud, but who alleged that they would have sold

earlier but were dissuaded from doing so by the defendant's misrepresentations. The complaint alleged that the misrepresentations, communicated directly to the plaintiffs, were made in order to induce the plaintiffs not to sell. The court held that if the allegations were true, the purposes of § 10(b) and Rule 10b–5 would be served by granting such an investor standing to sue because "a seller is injured as much when he suffers a loss on the sale of securities which he has been fraudulently induced to retain as when he is fraudulently induced to sell them." 252 F.Supp. at 219. A similar result was reached from similar facts in Travis v. Anthes Imperial Limited, 473 F.2d 515 (C.A.8, 1973).

There is, however, a critical difference between this case and Stockwell and Travis. Plaintiffs have not alleged that the Abernathys would have sold but for defendant's fraud, nor have they alleged that defendant's misrepresentations were designed to induce them not to sell. All that is alleged is that the Abernathys' investment decisions were influenced by misrepresentations and nondisclosures about the financial condition of GSC which were directed at the general investing public. The close nexus between a desire to sell, the frustration of that desire by defendant's fraud and an ultimate consummation after discovery of the fraud of the intended sale, a nexus which was found in Stockwell to raise a question of causation sufficient to defeat a motion to dismiss, simply does not exist here.

■ The allegations of the complaint force us to conclude that the Abernathys are no different than any other investor who held his stock throughout the period

---

2. The precise dates of the Abernathys' sales of GSC stock do not appear in the pleadings, despite an explicit order of the transferor court that the dates be pleaded in the Second Amended Complaint. See *infra*. Plaintiffs only allege that the Abernathy sales took place sometime in 1970. The dates of sale might have been relevant to a decision on this motion had there been a dispute over whether the sales were made before or after public disclosure of defendant's fraud. However, the averments of ¶ IV solve whatever dispute there might have been and obviate the need for precise dates of sale.

of fraud and later sells his stock to cut his losses. Such investors, although their investment decisions might well have been swayed by distorted and fraudulent misinformation, are denied a cause of action by the Congressional purpose of limiting standing to sue under § 10(b) only to those who have made purchases or sales of securities in connection with which the misrepresentations were made. Whether this restriction thwarts the goals which led to the enactment of the securities laws is a matter for Congress, not the courts, to decide. But the purposes of the Act as it now stands are not served by granting standing to holders of securities who, according to the averments of their own complaint, neither purchased nor sold stock during the period of defendant's alleged fraud. The motion to dismiss the Second Amended Complaint insofar as it seeks to state a claim on behalf of the Abernathys under § 10(b) will be granted. Since the chronological facts which underpin our holding, i. e., the fact that the purchases were made before the fraud, and that the sales were made after public disclosure of the fraud, cannot be altered, we see no reason for allowing a Third Amended Complaint. The dismissal will therefore be with prejudice.

We turn now to a consideration of defendant's contentions as to the remaining plaintiffs.

### Motion to Strike for Failure to Comply with the Order of the Transferor Court

Before this litigation was transferred to us under § 1407, the transferor judge entered an order requiring plaintiffs to amend their First Amended Complaint by pleading a number of facts with greater specificity. We conclude that the Second Amended Complaint substantially complies with that order in every respect save its failure to plead the stock certificate numbers of the GSC shares bought and sold by plaintiffs.[3] Whatever may be our own view on requiring this information, which is also available in the normal course of discovery, to be pleaded in the complaint, we think it inappropriate for a § 1407 transferee court to permit plaintiffs not to comply with previous orders of the transferor judge. Amending Exhibit "A", the schedule of purchases and sales which is incorporated into the Second Amended Complaint, should not be an undue burden for plaintiffs. We shall order that they amend Exhibit "A" to include the certificate numbers, and in all other respects we deny defendant's motion to strike for failure to comply with Judge Taylor's order.

### Motion to Strike Immaterial Matter

Defendant asks us to order stricken several allegations which it contends are extraneous, unnecessary or superfluous. This motion might have been appropriate in the old, unlamented days of fact pleading; it is not now. It is undoubtedly true that this complaint, like most others, contains some allegations that not every lawyer might have included. However, the strong disapproval of trials by pleadings that has been an underpinning of Federal practice since the adoption of the Federal Rules in 1938 necessitates a denial of defendant's motion.

### Plaintiffs' Motion for Class Action Determination

Plaintiffs define the class they seek to represent as comprising all public common stockholders of GSC other than officers, directors or management of GSC or any of its parent companies who held GSC common stock between

---

3. The Second Amended Complaint also fails to plead with specificity the dates on which the Abernathys sold their stock, *see supra*, but our disposition of the motion to dismiss makes it unnecessary for us to require exact compliance with that portion of Judge Taylor's order.

December 12, 1968 and February 22, 1971. December 12, 1968 is the date of the first alleged misrepresentation; February 22, 1971 is the date on which this lawsuit was instituted in Texas. Although we have determined that this action may proceed as a class action, we shall permit plaintiffs to represent a class somewhat different from the one they have defined.[4]

For the reasons we have already discussed in connection with defendant's motion to dismiss, the class shall exclude holders of GSC stock and shall include only those who either purchased or sold during the relevant period. We also disagree with plaintiffs' conception of the relevant period for class membership. We have been shown no authority which would support the proposition that the class of defrauded shareholders is to be defined by the fortuity of when the purported class representatives filed their lawsuit. We think instead that class membership must be restricted to those persons whose purchases or sales were causally connected to defendant's fraud. This means that the class shall include only those who purchased or sold shares of GSC stock between December 12, 1968 and the date of public disclosure of defendant's alleged fraud. Since the date of public disclosure is as yet undetermined, we shall define the class only in these terms for the present and establish a specific closing date after further discovery is had by the parties.

Defining the class as we have, we have concluded that plaintiffs have satisfied the requirements of Rule 23(a) and that this action comes within the purview of Rule 23(b)(3).

### 23(a)(1): numerosity and impracticability of joinder

 Plaintiffs have offered no evidence as to the precise number of individual class members there might be.

They do estimate, however, that approximately 1.5 million shares of nearly 29 million were owned by minority public shareholders not affiliated with GSC. Some courts have held that a large offering may reasonably lead to an assumption that a sufficiently numerous class exists to satisfy the requirements of 23(a)(1), e. g., Jacobs v. Paul Hardeman, Inc., 42 F.R.D. 595 (S.D.N.Y.1967) (issuance of 7000 debentures). But other courts have held that granting class action status is improper absent a positive showing by plaintiffs of numerosity. Demarco v. Edens, 390 F.2d 836 (C.A.2, 1968); Cannon v. Texas Gulf Sulphur Co., 53 F.R.D. 216 (S.D.N.Y. 1971). However, in addition to their estimate of the number of shares owned by members of the purported class, plaintiffs also assert that the class members are geographically scattered, a factor which may be considered in determining whether or not joinder is impracticable. See, e. g., Swanson v. American Consumer Industries, Inc., 415 F.2d 1326 (C.A.7, 1969). This combination of plaintiffs' general assertions of apparent numerosity and their claims of geographic dispersion leads us to conclude that the requirements of 23(a)(1) are met, especially since defendant has asserted nothing to the contrary.

### 23(a)(2): common questions of law or fact

 The gravamen of plaintiffs' complaint is that defendant made misrepresentations in its Annual Report of 1968, issued in 1969, on which the minority shareholders relied to their detriment. At the very least, questions of the existence and materiality of the statements will be common to all class members. This is enough to satisfy Rule 23(a)(2). Korn v. Franchard Corp., 456 F.2d 1206, 1210 (C.A.2, 1972).

---

4. The fact that plaintiffs have defined the class overbroadly does not necessitate dismissal of the class allegations. The class may instead be appropriately limited. Cole v. Schenley Industries, Inc., 60 F.R.D. 81 (S.D.N.Y.1973).

*23(a)(3): typicality of plaintiffs' claims as representatives of the class*

▮ Plaintiffs' claims are typical of those of the class as we have defined it. Plaintiffs are all either purchasers or sellers of GSC common stock, as are the members of the purported class, and the injury of all was allegedly caused by the same misrepresentations. They have no interests which would be in any way antagonistic to those of the class and therefore meet the standards of Rule 23(a)(3). *See* Mersay v. First Republic Corp., 43 F.R.D. 465, 468–469 (S.D.N.Y. 1968).

*23(a)(4): adequacy of representation*

▮ Plaintiffs appear able to represent fairly and adequately the interests of the class. Their interests are coexistent with those of the class and are sufficiently substantial to suggest that they will prosecute this action vigorously. Nothing to date suggests that either plaintiffs or their counsel will be unable to meet the demands of this litigation.

*23(b)(3)*

▮ The common questions of law and fact discussed above predominate over whatever individual questions might arise. A suit by a class of similarly situated stockholders alleging fraud by means of the same misrepresentations is one of the most compelling occasions for class action treatment. As the Advisory Committee on the 1966 Amendments to the Federal Rules stated in its Note to Rule 23(b)(3):

"* * * [A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class." Notes of the Advisory Committee on the 1966 Amendments to the Federal Rules of Civil Procedure.

We can perceive no material variation in the misrepresentations or in the kinds or degrees of reliance by individual shareholders which the Committee Note says might indicate unsuitability of class action treatment.

In addition, a class action is the superior method for adjudicating this dispute. It seems far preferable to resolve all of the common issues at once and to dispose of identical claims of present and potential plaintiffs in one class action than to do so in a number of individual lawsuits.

It should be noted, in light of Rule 23(b)(3)(B), that three others suits have been commenced concerning the issues in controversy here. One need not concern us here, since we have already granted motions to dismiss the 10b–5 allegations and denied class status on the ground that the representative plaintiffs were not members of the class they purported to represent. Williams v. Pennsylvania Company, 367 F.Supp. 1158 (E.D.Pa., filed Nov. 19, 1973). The other, Templeton v. Great Southwest Corporation, C.A. 73–2336, has nearly identical allegations of violations of § 10(b) and Rule 10b–5 by GSC. However, Templeton, which has been brought on behalf of the individual plaintiffs only and not as a class action, also names defendants not named here and alleges more broadbased fraudulent conduct by the defendants not named here. The pendency of the Templeton suit, however, does not lead us to conclude that class action status should be denied on the issues raised in the complaint before us. The Templeton plaintiffs may be members of the class defined here and have their overlapping 10b–5 claims adjudicated through the class action or, if they choose, may opt out of the class and continue to proceed individually. They may of course press as individual plaintiffs the issues not common to the members of this class. Whatever may come to pass, the existence of the Templeton litigation does not suggest that a class ac-

tion will be unfair to any individual class member or that a class action would be any the less desirable from the standpoint of judicial convenience and economy.

The third lawsuit is Hanian v. Ray, C.A. 73–1341. The plaintiffs in Hanian, who include all plaintiffs in this action, have brought a broader individual, class and derivative action against GSC and several individuals who are not defendants here.[5] They have not yet moved for a class action determination. Although it is possible that the Hanian litigation will have some bearing on the class status here, it does not necessitate at this time either a conclusion or a class definition different from the one we have reached.

---

5. The *Hanian* plaintiffs and plaintiffs in this action also have identical counsel.