**MADISON FUND, INC., Plaintiff,**

v.

**The CHARTER COMPANY and Shearson, Hammill & Co., Inc., Defendants.**

No. 73 Civ. 2633 (WCC).

United States District Court, S. D. New York.

Sept. 24, 1975.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for plaintiff.

Cleary, Gottlieb, Steen & Hamilton, New York City, for Charter Co.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for Shearson, Hammill.

## MEMORANDUM AND ORDER

CONNER, District Judge:

The subject of the present motion to dismiss is a complaint containing four counts. In Count I, defendants are charged with violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Count II charges defendants with violation of

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. 240.10b–5, and with common law fraud. The third count, directed against defendant The Charter Company (Charter) alone, charges breach of contract. The fourth count, directed against defendant Shearson, Hammill & Co. (Shearson) alone, charges tortious inducement of breach of contract. Defendants have moved, pursuant to Rule 12(b)(6) F.R.Civ.P., for an order dismissing those portions of the complaint that are grounded on the Sherman Act and the Exchange Act, for failure to state claims upon which relief may be granted. Defendants have further moved, pursuant to Rule 12(b)(1) F.R.Civ.P., to dismiss the remainder of the complaint for lack of subject matter jurisdiction.

For the purpose of determining a motion to dismiss, the factual allegations contained in the complaint must be accepted as true. *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); 2A J. Moore, Federal Practice § 12.08 (2d ed. 1972). Furthermore, such a motion must be denied unless it is clear that no reasonable interpretation of the facts alleged will support the plaintiff's claims for relief. *Kurzweg v. Hotel St. Regis Corp.,* 309 F.2d 746 (2d Cir. 1962).

Plaintiff Madison Fund, Inc. (Madison), a corporation organized under the laws of Delaware, is a publicly-held, closed-end investment company; its principal place of business is located in New York. Defendant Charter is a Florida corporation having its principal place of business in Florida. Defendant Shearson, a New York corporation, is a registered securities broker-dealer, with its principal place of business in New York. Under a letter agreement executed in June 1969, Madison purchased from Charter 64,500 unregistered shares of Charter common stock. The purchase contract included the following paragraph:

"Charter agrees that if at any time Charter shall determine to make application to register any of its securities under the Act, it will upon each such determination promptly give written notice of its intention in that regard to the Purchaser. Upon a written request from Purchaser, given not more than twenty days after receipt of notice from Charter of such proposed application, Charter will at the time of making such application also endeavor to register under the Act any shares then held by Purchaser or any nominee for Purchaser and designated by such Purchaser in such notice * * *."

Pursuant to the above provision, a March 1971 letter from Charter advised Madison of a contemplated registration; Madison responded, in April 1971, with a written request that its Charter shares be among those registered. By June 1971, Charter and Shearson were engaged in negotiations for a firm-price underwriting of the Charter stock to be included in the proposed registration; Shearson was to act as principal underwriter of the distribution. Asked by Charter if it wished to participate in that offering, Madison declined to do so, but notified Charter, in October 1971, that Madison nonetheless wished its Charter shares to be registered "for the shelf," *i. e.,* for public sale on a "from-time-to-time" basis. Within a few days thereafter, Charter filed a proposed registration statement with the Securities and Exchange Commission. Neither the original registration statement nor the amended statement that became effective on December 2, 1971, included Madison's Charter stock. On December 8, 1971, Madison informed Charter that it considered its "piggy-back" registration right to have been breached and demanded that Charter pursue the "earliest possible" shelf registration. A shelf registration statement that included Madison's Charter shares was filed by Charter on December 16, 1971. That registration did not become effective until August 31, 1972. During the period from December 2, 1971 to August 31, 1972, the market price of Charter common stock reached a high of $45.25 per share. Madison disposed of its entire holding of Charter stock in a series of

sales from September 1972 to May 1973, realizing an average price per share of approximately $23.00. Madison claims that its foreclosure from selling its Charter shares on the market between December 2, 1971 and August 31, 1972 caused it an actual loss of $1,437,046 and seeks treble damages under the Sherman Act.

Count I of Madison's complaint, sounding in antitrust, requires little discussion. The claim is based upon Charter's failure to include Madison's Charter shares in the December 2 registration statement—an allegedly intentional omission induced by Shearson. The complaint's charge that defendants thus conspired "to eliminate competition to the Charter common stock being sold through the Shearson underwriting" must fall because, at the time of the accused conspiracy, Madison was not in the posture of a competitor to be eliminated. Madison's shares were denied access to the market, not by the combination of which Madison now complains, but rather, by the command of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e. The restraint that operated against Madison was thus a legal one, issuing from the statutory prohibition against trade in unregistered stock. To be sure, Madison may have had a contractual right to require that Charter act to procure removal of that impediment. It scarcely follows, however, that Char-

ter's failure or refusal to proceed affirmatively to *open* the market to Madison's shares constituted a restraint of trade within the meaning of Section 1 of the Sherman Act. The antitrust statute was framed to preserve normal competitive forces in interstate markets against unreasonable inhibition. *Standard Oil Co. v. Federal Trade Commission*, 340 U.S. 231, 71 S.Ct. 240, 95 L.Ed. 239 (1951). It was not designed to police the performance of private contracts. I have found no judicial ruling, and none is suggested by plaintiff, that has stretched the outer limits of antitrust law to accommodate facts such as those alleged in Madison's complaint. Indeed, plaintiff's citation of decisions—involving tying agreements, price-fixing and group boycotts—merely demonstrates, if only by force of contrast, that the complaint at bar lies far from the area protected by the Sherman Act.[1] Moreover, this Court is not the first to have pierced through a nominal Sherman Act claim to find a cause of wholly different substance—in this case, one grounded in breach of contract. *Cf. Coenen v. R. W. Pressprich & Co.*, 453 F.2d 1209, 1215 (2d Cir. 1972); *Passerieux v. Time, Inc.* [1975 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 94,805 at 96,680 (S.D.N.Y.1974). The motion to dismiss Count I is accordingly granted.

Madison's claims under Section 10(b) of the Securities Exchange Act[2] and Rule 10b–5,[3] promulgated thereunder, as

---

1. The parties have devoted much discussion in their briefs to whether the "pervasive regulatory scheme" provided by the federal securities acts renders this case "immune" from the laws of antitrust. Because I conclude that the Sherman Act does not in the first instance apply to the facts alleged by plaintiff, the question of antitrust immunity here pares down to irrelevancy.

2. Section 10, entitled "Regulation of the Use of Manipulative and Deceptive Devices," reads in relevant part:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

* * * * * *
(b) To use or employ, in connection with the purchase or sale of any security * * *, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

3. Rule 10b–5, entitled "Employment of Manipulative and Deceptive Devices," reads as follows:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange

well as its charge of common law fraud, are based upon alleged oral assurances given Madison by Charter, with Shearson's acquiescence, that Madison's Charter shares would be included in the December 2 registration statement. Those assurances, Madison asserts, were intentionally misleading. Thus, according to the complaint, defendants' misrepresentation[4] was an implement of a fraudulent scheme to keep Madison's shares off the market and out of competition with the Shearson underwriting.

 As presently framed, Count II is fatally deficient in two respects. To state a private claim grounded in fraud, whether under common law or federal securities law, a complaint must allege more than a witting misrepresentation by defendant and a subsequent loss to plaintiff. Rather, such complaint must at the least charge that the loss claimed to have been suffered was a *consequence* of the fraud, with the elements of materiality and, at least in the case of misrepresentation, reliance serving as essential links in the causative chain.[5] W. Prosser, Torts 685–86 (4th ed. 1971); A. Bromberg, Securities Law: Fraud—SEC Rule 10b–5 § 8.7(1) at 213 (1967). As it now reads, the complaint before this Court neither refers to, nor suggests a theory of, reliance or materiality. Hence the first deficiency. Count II's second fatal flaw relates specifically to Madison's claims under Section 10(b) and Rule 10b–5. In its present form, Count II

charges defendants with fraud only "in connection with the Shearson underwriting." But, according to plaintiff's own recital of the facts, Madison did not itself participate in the underwritten distribution. The complaint as presently framed thus runs afoul of the purchaser/seller requirement for Rule 10b–5 standing as established by the Second Circuit in *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2d Cir. 1952), and recently confirmed by the Supreme Court in *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975).

In the hope of curing both defects, Madison has requested leave to amend its complaint by the insertion of a clause alleging 1) fraud "in connection with Madison's sale of Charter stock after * * * August 31, 1972" and 2) Madison's forbearance from "taking action to assure that its Charter stock was included in the Registration Statement * * * ." Leave to amend a pleading should be given "freely," Rule 15(a) F.R. Civ.P., absent the movant's bad faith, resultant prejudice to a party or the futility of amendment. 3 J. Moore, Federal Practice ¶ 15.10 (2d ed. 1972). The presently proposed amendment—to the extent that it supplies some theory of materiality and reliance—would cure the infirmity of plaintiff's common law fraud claim, and leave to amend is therefore granted. Nonetheless, for the reasons stated below, the pleading thus

(1) to employ any device, scheme or artifice to defraud,
(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

**4.** According to plaintiff, defendants are chargeable, not alone with misrepresentation, but with non-disclosure as well, the latter on the ground that defendants failed to apprise Madison that Charter did not intend to include

Madison's shares in the December 2 registration statement. Thus, in essence, Madison urges that defendants may be liable not only for the false assurances allegedly given by them, but also for their failure to reveal that those assurances were false. Such two-sided coin does not hold currency with this Court.

**5.** In *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972), the Supreme Court ruled that in cases of non-disclosure "positive proof of reliance is not a prerequisite to recovery." Nonetheless, materiality—defined by *Affiliated Ute* to subsume "that [which] a reasonable investor might have considered * * * important in the making of his decision"—still must be shown. *List v. Fashion Park, Inc.,* 340 F.2d 457, 462 (2d Cir.), cert. denied, 382

amended does not avail plaintiff in its attempt to bring this case within the bounds of Rule 10b–5.

Madison apparently places its principal reliance on *Stockwell v. Reynolds & Co.,* 252 F.Supp. 215 (S.D.N.Y.1965), a case that Madison asserts is square with its own. Plaintiffs in *Stockwell* alleged that they had advised defendants of their intention to sell certain stock, but were persuaded by defendants not to do so; sometime thereafter, plaintiffs discovered that defendants' representations had been knowingly false and ultimately sold their shares at a loss. The *Stockwell* Court ruled that the deferred sales qualified plaintiffs as sellers under the *Birnbaum* rule, that defendants' fraud had been "in connection with" those sales, and that plaintiffs were thus entitled to maintain their action under Rule 10b–5.

Charter and Shearson for their part suggest that *Stockwell* and kindred "frustrated seller" decisions have been repudiated by the Supreme Court in *Blue Chip Stamps, supra.* According to defendants, *Blue Chip Stamps* impliedly establishes that any plaintiff who claims a loss resulting from his retention of stock is *per se* beyond the pale of the *Birnbaum* rule—whether or not that stock was ultimately sold. Madison contends that *Stockwell* stands unshaken in the wake of *Blue Chip Stamps'* broad pronouncement that the *Birnbaum* rule "limits the class of plaintiffs to those who have at least dealt in the security to which the * * * representation * * * relates." *Supra* at 23.

Whatever the breadth of the *Blue Chip Stamps* ruling, this Court is not now obliged to take its measure, for Madison's Rule 10b–5 claim does not stand or fall with *Stockwell.* Even if

gauged according to the liberal *Stockwell* standard, Madison's complaint lies outside the ambit of Rule 10b–5. In *Stockwell,* plaintiffs alleged that they had decided to sell their stock, had informed defendants of those decisions, and would have effected the sales but for the countervailing influence of defendants' misrepresentations. In the present case, by contrast, Madison alleges only that it had decided, at the time of the fraud, to have its shares registered for public sale at some indeterminate time. The complaint thus does not allege that Madison had had a fixed, much less expressed, intention to sell its shares; indeed, the fact that Madison chose not to participate in the Shearson underwriting suggests the absence of such intention. Moreover, where a "frustrated seller" claim is made under Rule 10b–5, a clear indication of an alleged initial intention to sell is critical. As Judge Tyler observed in *In re R. Hoe & Co.,* [1973–1974 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 94,552 at 95,923 (S.D.N.Y.1974),

> "In *Stockwell* * * *, plaintiffs alleged that in fact they had advised their broker of their wish to sell their stock. That allegation, if proven, would have provided a ready measure of damages (the price at the time of the misrepresentation as against the sale price), as well as verification of the fact that plaintiffs' retention and later sale were actually related to the fraud. Both elements, of course, are central functions of the § 10(b) standing requirement * * *."

In the absence of those two elements in the present case, the misrepresentation charged to defendants cannot be linked to the eventual sales made by Madison without straining both the "in connec-

U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965). Moreover, there is some force to the Third Circuit's reasoning that *Affiliated Ute* has not rendered the question of actual reliance wholly irrelevant in non-disclosure cases, at least where "defendant is able to demonstrate that there was clearly no reliance, that is, that even

if the material facts had been disclosed, plaintiff's decision as to the transaction would not have been different * * *." *Rochez Brothers, Inc. v. Rhoades,* 491 F.2d 402, 410 (3d Cir. 1974). See also *List v. Fashion Park, Inc., supra* at 463–64.

tion with" and standing requirements to their breaking points.[6]

In disallowing plaintiff's Rule 10b–5 claim, I am mindful of Judge Lasker's admonition that "Congress did not intend § 10(b) to be a remedy for all investors injured by any fraudulent practices." *Ingenito v. Bermec Corp.*, 376 F.Supp. 1154, at 1178 (S.D.N.Y.1974). This Court therefore grants defendants' motion to dismiss so much of Count II as purports to be brought under Section 10(b) and Rule 10b–5.

The above dispositions perforce remove all bases for pendent jurisdiction over plaintiff's common law claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In the absence of diversity, this Court would be obliged to grant defendants' further motion to dismiss for lack of subject matter jurisdiction. However, plaintiff has moved that, in the event of a dismissal of the federal law claims, defendant Shearson be dropped as a party. An action between Madison and Charter alone would satisfy the full diversity rule of *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). Both Madison and Charter agree, as does this Court, that Shearson is not an indispensible party. Plaintiff's motion is granted to the extent that it requests dismissal, without prejudice, of Count V and so much of Count II as is directed against defendant Shearson.

So ordered.

**6.** It should be noted that plaintiff has not alleged that it had purchased its Charter shares in reliance on Charter's representation that the shares would be included in any registration and that Charter had at that time intended not to perform. Were such allegations the substance of the complaint, Madison would apparently have standing as a purchaser. See *Devonbrook, Inc. v. Lily Lynn, Inc.*, [1973–1974 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 94,621 at 96,205 note 1 (S.D.N.Y.1974).