Joesph A. RUSKAY, Plaintiff,

v.

Philip J. LEVIN et al., Defendants.

No. 70 Civ. 3029 (CHT).

United States District Court, S. D. New York.

Jan. 19, 1977.

Friend & Dorfman, New York City, for plaintiff; Jerold W. Dorfman, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants Bluhdorn, Judelson, Gaston, Silverman, Davis, Levien, Felt and Levy; Arthur L. Liman, New York City, of counsel.

Skadden, Arps, Slate, Meagher & Flom, New York City, for defendant Madison Square Garden Corp.; James Davis, New York City, of counsel.

Shea, Gould, Climenko & Casey, New York City, for defendants Philip J. Levin, Janice H. Levin, The Philip J. and Janice H. Levin Foundation, and Sommer; Milton S. Gould, New York City, of counsel.

Simpson, Thacher & Bartlett, New York City, for defendants Transnation Development Corp. (formerly GW Land Corp.), and G & W Industries, Inc.; Conrad K. Harper, New York City, of counsel.

Cleary, Gottlieb, Steen & Hamilton, New York City, for defendant Everett; George Weisz, New York City, of counsel.

TENNEY, District Judge.

The instant action is a "triple derivative" stockholders action on behalf of Gulf & Western Industries ("GWI"), Gulf & Western Land and Development Corporation ("GW Land") (a former subsidiary of GWI), and Madison Square Garden Corporation ("Madison Square") alleging violations of Section 10(b)[1] of the Securities Exchange

---

1. Section 10(b) provides as follows:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

. . . . .

Act of 1934 (15 U.S.C. § 78j) and Rule 10b–5[2] promulgated thereunder. Plaintiff at the time of the acts complained of had been a stockholder of GWI for many years, and in July 1969 received shares of GW Land as part of a distribution by GWI to its shareholders. In 1971 he acquired shares of Madison Square when the successor to GW Land was merged with Madison Square. Defendants Philip J. Levin (succeeded by the estate of Philip J. Levin and referred to hereinafter as "Levin"), Charles Bluhdorn, David N. Judelson, and Don F. Gaston were directors of both GWI and GW Land; defendants Samuel J. Silverman, Martin S. Davis and Frances S. Levien were directors only of GWI; and defendant Marjorie L. Everett was a director only of GW Land. Defendant Sigmund Sommer was a partner of defendant Levin in a private real estate business but was neither an officer nor a director of GWI or GW Land. Defendants Irving Mitchell Felt and George Morton Levy, together with defendants Bluhdorn, Judelson, and Gaston, were also directors of defendant Madison Square in 1971.[3] Defendant Janice H. Levin is Levin's widow, and defendant The Philip J. and Janice H. Levin Foundation ("Foundation") is a charitable foundation of which Janice H. Levin was a cotrustee with Levin at all times complained of herein.

Plaintiff's Second Supplemental and Amended Complaint ("complaint") asserts four derivative causes of action. The first and second are asserted on behalf of GWI and GW Land and relate to a September 1969 tender offer by GW Land for the stock of Roosevelt Raceway Corporation ("Roosevelt"). The fourth relates to the same incidents and is asserted on behalf of Madison Square, successor to GW Land. The third cause of action is asserted on behalf of Madison Square and relates to the settlement in May 1971 of certain lawsuits in federal district courts in New York and Illinois.

The first and second causes of action charge that in June 1969 Levin, then an officer of GW Land, disclosed material inside information to Janice H. Levin, the Foundation and Sommer ("tippee defendants") about an impending tender offer to be made by GW Land for Roosevelt common stock; that tippee defendants thereupon purchased 79,200 shares of Roosevelt stock on the open market at an average price of $32 per share; that thereafter in September 1969 with full knowledge of said tippee defendants' investments in Roosevelt, Levin participated with the defendant directors of GW Land in publishing a tender offer by GW Land for the purchase of 400,000 shares of Roosevelt at a price of $46.50 per share; that the foregoing resulted in the unjust enrichment of tippee defendants to the extent of at least $14.50 per share, at the expense of GW Land and GWI which were thereby deprived of a valuable corporate opportunity due to the breach of fiduciary duties owed the corporations by defendant directors. These acts are said to amount to a violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule

---

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

**2.** Rule 10b–5 provides as follows:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(1) to employ any device, scheme, or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security."

**3.** GW Land changed its name in June 1970 to Transnation, and Transnation merged with Madison Square in February 1971, the surviving corporate entity.

10b–5 promulgated thereunder. The second cause of action repeats the allegations of the first and realleges the breach of fiduciary duties by the defendant officers and directors of GWI and GW Land. It adds nothing to the first cause of action and can fairly be characterized as mere surplusage.

Plaintiff's third cause of action involves a different set of facts, alleging that Everett wrongfully settled several lawsuits she had commenced against many of the same named defendants but rests "on substantially the same grounds" as the first and second causes of action. (Complaint ¶ 23). It is not alleged that Everett was an officer, director or controlling shareholder of Madison Square, the successor corporation with whom she settled, nor that she owed the corporation any fiduciary duty. Nevertheless, the complaint claims in conclusory fashion that the settlement was wrongful and made without shareholder or court approval. (*Id.* ¶ 28). The third cause of action further alleges that the directors of Madison Square breached their fiduciary duties to the corporation by transferring a corporate asset to Everett for inadequate consideration in order to settle "lawsuits against themselves and others individually." (*Id.* ¶¶ 30, 31). Plaintiff seeks rescission of the settlement agreement or, in the alternative, damages of $48 million against the defendant directors of Madison Square.

Finally, the fourth cause of action repeats the allegations of the first and second causes of action and additionally claims that the directors of GW Land should have made the tender offer in June 1969, when Roosevelt stock sold at $31 per share, but that they delayed the offer in order to avoid the adverse impact it would have had on GWI, in which such directors had substantial stockholdings. Damages are claimed against GWI and its directors in the sum of $48 million.

Defendants Levin, Janice H. Levin, the Foundation, Sommer, Bluhdorn, Judelson, Gaston, Silverman, Davis, Levien, Felt and Levy have moved to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rules") on the ground that this Court lacks subject matter jurisdiction over this action. Defendant Everett has moved pursuant to Rule 12(b)(6) to dismiss the first, second and third causes of action for failure to state a claim upon which relief can be granted, and has also moved to dismiss the third cause of action pursuant to Rule 12(b)(1). Defendant Everett has moved alternatively for summary judgment pursuant to Rule 56 dismissing the first, second and third causes of action. (Everett is not named in the fourth cause of action.) Plaintiff has purported to move for summary judgment by way of cross-motions.

In determining the motions for relief under Rule 12 the Court has considered evidence outside the pleadings in the form of affidavits and interrogatories and documentary evidence submitted therewith, and, accordingly, treats such motions as ones for summary judgment under Rule 56.

For the reasons hereinafter set forth, the defendants' motions are granted.

## THE FIRST CAUSE OF ACTION

Although the general nature of the first cause of action has been alluded to hereinbefore, it is necessary to restate plaintiff's allegations in greater detail. GW Land was formed in June 1969 as a wholly-owned subsidiary of GWI, which immediately thereafter distributed 28% of GW Land stock in the form of dividends to GWI stockholders. As of September 24, 1969, 31% of GW Land stock was owned by Levin and his wife, either individually or as trustees of the Foundation, 42% was owned by GWI and the remainder by the public (principally GWI shareholders). The complaint charges that from June to September 1969 and on the basis of "material inside information" disclosed by Levin, tippee defendants Sommer and the Foundation (per Janice H. Levin) purchased at least 51,750 shares of Roosevelt stock at an average cost of $32 per share. (Complaint ¶ 12).

It is further charged that Levin was fully aware of tippee defendants' purchases when he caused GW Land to publish a tender offer for 400,000 shares of Roosevelt

at $46.50 per share on September 25, 1969 (*id.* ¶ 13) and thereby afforded tippee defendants a $14.50 profit per share while depriving GW Land "of the opportunity of purchasing at an average cost of $32.00 a share on the open market those shares of Roosevelt purchased" by tippee defendants. (*Id.* ¶ 15). Although the material inside information is not particularized in the complaint, it presumably concerns tips of GWI's general interest in acquiring racetracks. Plaintiff concludes that tippee defendants "profited at the expense of GW Land in breach of the fiduciary duties owed by defendant officers and directors of GW Land and GWI, and in violation of the Securities Exchange Act" (*id.*); "that said corporations were thus deprived of a valuable corporate opportunity" (*id.* ¶ 16); and that tippee defendants "were thus unjustly enriched at the expense of these corporations." (*Id.* ¶ 17). Tippee defendants were not officers or directors of the corporations. It is conceded that no other defendants made any profit on these stock transactions.

██ It is imperative to note that the first cause of action describes not one but two separate and distinct sets of securities transactions. The first one concerns tippee defendants' purchases of Roosevelt stock between June 16 and September 9, 1969, allegedly on the basis of confidential information. It is not alleged that corporate plaintiffs GW Land or GWI participated in these trades as either purchaser or seller. Yet, it is now firmly established law that standing to bring a private damage action under Rule 10b–5 is limited to actual purchasers and sellers of the securities involved in the alleged fraud. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461, 464 (2d Cir.), *cert. denied,* 343 U.S. 956, 72 S.Ct.

1051, 96 L.Ed. 1356 (1952); *Petersen v. Federated Development Co.,* 387 F.Supp. 355, 358 (S.D.N.Y.1974); *In re Penn Central Securities Litigation,* 62 F.R.D. 181, 185 (E.D. Pa.1974). Thus, plaintiff, suing derivatively for GW Land and GWI, has no standing to challenge trades between the individual tippee defendants and outside persons. *Haberman v. Murchison,* 468 F.2d 1305, 1311 (2d Cir. 1972). The corporations were not party to the trades and suffered no trading loss in reliance upon defendant tippers' nondisclosure or defendant tippees' trades during the summer. No hypothetical loss of an opportunity for advantageous trading by the corporation at the time of the trading by tippee defendants will substitute for the purchaser/seller requirement. *Blue Chip Stamps v. Manor Drug Stores, supra,* 421 U.S. at 737–38, 95 S.Ct. 1917. Accordingly, no derivative action on behalf of these corporations will lie under Section 10(b) and Rule 10b–5 based on allegations of fraud in connection with the purchases by tippee defendants.[4]

The second set of transactions described in the first cause of action involves the GW Land tender offer for 400,000 shares of Roosevelt stock at $46.50 per share, announced September 25, 1969. Although GWI was not a participant, it is obvious that GW Land as tender offeror was a purchaser of the stock within the intendment of Rule 10b–5. Defendants are charged with depriving GW Land of a corporate opportunity to purchase the 51,750 shares of Roosevelt that had been previously purchased by tippee defendants at $32. (Complaint ¶ 17).

██ It is obvious that in order to assert claims of fraud, plaintiff must show that he was injured as a result of some form of deception or misleading conduct by defend-

---

**4.** While the stockholders of Roosevelt who sold their stock either directly to tippees or on the market during the period the tippees purchased and the inside information was not disclosed would be able to maintain an action against both trading tippees and nontrading tippers, *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith,* 495 F.2d 228 (2d Cir. 1974), such individuals are not plaintiffs in this case and it is

not sufficient for them to show that a third person, in a separate transaction, was defrauded. *See Chris-Craft Industries, Inc. v. Piper Aircraft Corp.,* 337 F.Supp. 1128, 1139 (S.D.N. Y.1971), *aff'd in part,* 480 F.2d 341, 376 (2d Cir.), *cert. denied,* 414 U.S. 910, 924, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973); *Kremer v. Selheimer,* 215 F.Supp. 549, 552 (E.D.Pa.1963).

ants. Reaching unique as well as common deceptions, Rule 10b–5 is now understood to proscribe fraud in a particular trade in addition to fraudulent *schemes* involving an otherwise intact trading transaction. *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir. 1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *A.T. Brod & Co. v. Perlow,* 375 F.2d 393, 397 (2d Cir. 1968). Nevertheless, the Second Circuit has of late admonished that

> "[t]he federal securities law does not confer jurisdiction for instances of corporate mismanagement or self-dealing absent fraud intrinsic to a securities transaction." *Marshel v. AFW Fabric Corp.,* 533 F.2d 1277, 1282 (2d Cir. 1976), *vacated and remanded for consideration of mootness,* —— U.S. ——, 97 S.Ct. 228, 50 L.Ed.2d 162 (1976).

*See Superintendent of Insurance v. Bankers Life & Casualty Co.,* 404 U.S. 6, 10–12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); *Schlick v. Penn-Dixie Cement Corp., supra,* 507 F.2d at 379–80; *Popkin v. Bishop,* 464 F.2d 714, 719 (2d Cir. 1972).

■ Although proof of the elements of fraud under Rule 10b–5 is less rigorous than that of fraud under the common law, *Affiliated Ute Citizens v. Unites States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 495 F.2d 228, 235 n.12, 239–40 (2d Cir. 1974), the plaintiff still must show some individual injury from the fraud alleged. *Drachman v. Harvey,* 453 F.2d 722, 731–32 (2d Cir. 1972).

In discerning federal securities fraud, the Court faces a twofold inquiry. First the Court must examine whether any part of the incident securities transaction—in this case the tender offer—was inherently fraudulent. If not, the Court then must ascertain whether the trading activity which appears valid and lawful on its face in fact served as a vital part of an overall scheme to defraud.

■ Nondisclosure or misrepresentation in trading are the traditional indicia of securities fraud under Rule 10b–5. *SEC v. Texas Gulf Sulphur Co., Inc.,* 401 F.2d 833, 848 (2d Cir. 1968), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). In this case, however, there is no claim that the tender offer was not accompanied by full disclosure.[5] Nor is there even a claim that the tender offer price did not fairly represent the value of the Roosevelt stock at the time of its purchase by GW Land. *Cf. Green v. Santa Fe Industries, Inc.,* 533 F.2d 1283, 1291 (2d Cir. 1976), *cert. granted,* —— U. S. ——, 97 S.Ct. 54, 50 L.Ed.2d 74 (1976). Plaintiff's reliance on *Superintendent of Insurance v. Bankers Life & Casualty Co., supra,* 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128; *Drachman v. Harvey, supra,* 453 F.2d 736; and *Schoenbaum v. Firstbrook,* 405 F.2d 215 (2d Cir. 1968) (*en banc*), *cert. denied,* 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969), is not determinative since in each of those cases, unlike the instant case, the corporation was deceived in some fashion.[6]

It being apparent that there was no fraud in the trading activity itself, the more difficult inquiry is whether the purchases of the tendered Roosevelt shares, ostensibly lawful, served as an intrinsic part of a larger scheme to deceive and manipulate investors in GW Land. Absent the element of nondisclosure it is difficult to demonstrate such a scheme although recent cases suggest that it may be possible even where there is full disclosure. *Marshel v. AFW Fabrics Corp., supra,* 533 F.2d 1277; *Green*

---

**5.** In the tender transaction federal law required the full disclosure of all material information relative to the proposed tender offer. Section 14(e) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78n(e). Plaintiff does not allege, in pleading his first cause of action, that disclosure of any purported self-dealing was not made in the required "Invitation for Tenders." Plaintiff's present claim in his Memorandum in Opposition (pp. 7–8) that full dis-

closure of self-dealing was not made is a conclusion without substance.

**6.** Tippee defendants, who alone were in a position to profit by the tender offer, were not insiders of GWI or GW Land, so that their purchases present no issue of conflict of interest between outsiders and insiders in the tender offer.

*v. Santa Fe Industries, Inc., supra,* 533 F.2d 1283.

However, plaintiff here has failed to demonstrate the existence of such a scheme. Allegations that GW Land and its shareholders were injured as a result of the corporation's purchases of stock in Roosevelt are merely conclusory and fail to specify what or how any injury is linked to the tender offer. Moreover, the circumstances constituting fraudulent activity are not drawn with particularity as required under Rule 9(b) although allegations of fraud are intermittently pleaded. *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir. 1972); *Lewis v. Varnes,* 368 F.Supp. 45, 47 (S.D.N.Y.), *aff'd,* 505 F.2d 785 (1974); *Arpet, Ltd. v. Homans,* 390 F.Supp. 908, 912 (W.D.Pa.1975). There is no allegation here that the tender offer was made in bad faith in order to artificially manipulate the market.[7] *Levine v. Biddle Sawyer Corp.,* 383 F.Supp. 618, 622 (S.D. N.Y.1974).

This Court must conclude, then, that the first cause of action stated in the complaint, even when liberally construed, fails to state a claim under Section 10(b) and Rule 10b–5. Plaintiff has no standing under federal securities law to object to tippee defendants' trades, and there is no indication of fraud inherent in or intertwined with GW Land's September tender offer for Roosevelt stock. The gravamen of the cause of action is abuse of corporate opportunity, actionable under state law as a breach of fiduciary duty on the part of those defendant directors who purportedly engaged in self-dealing. *Diamond v. Oreamuno,* 24 N.Y.2d 494, 301 N.Y.S.2d 78, 248 N.E.2d 910 (1969); *see Schein v. Chasen,* 478 F.2d 817 (2d Cir. 1973), *vacated sub nom. Lehman Bros. v.*

*Schein,* 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974).

## THE SECOND CAUSE OF ACTION

The second cause of action merely repeats the allegations of the first cause of action, charging that the "individual defendants breached the fiduciary duty they owed as officers and directors to the corporate defendants, usurping a corporate opportunity and permitting themselves and others to profit at the expense of their corporations." (Complaint ¶ 21). Plaintiff does not claim any federal securities law violation, but merely charges a common law breach of fiduciary duties on the part of defendants in the usurpation of a corporation opportunity. (Plaintiff's Memo. in Opposition at 2). What has already been said with respect to the first cause of action is equally applicable to the second.

## THE FOURTH CAUSE OF ACTION

After repeating the allegations of the first and second causes of action, plaintiff in his fourth cause of action alleges on information and belief that in June 1969 Levin, who had been negotiating on behalf of GWI for over a year for control of Roosevelt, proposed to the directors of GWI, including defendants Bluhdorn and Gaston, that GW Land make a tender offer for Roosevelt, a move which said directors recognized would be a good investment for GW Land. (Complaint ¶¶ 33, 34). Generally accepted accounting principles mandated that the financial condition of GW Land be included in the statement of the parent GWI. Several defendant directors of GWI, including Bluhdorn and Gaston, were also directors of GW Land and held large blocks of GWI stock. (*Id.* ¶¶ 35–36). Plaintiff

---

**7.** The complaint alleges that:

"As a result of the tender offer by GW Land and an ensuing battle for control of Roosevelt between GW Land and Madison Square Garden Corp., a corporation whose shares are traded on the New York Stock Exchange, the price of Roosevelt shares on the American Stock Exchange rose to as high as $50.00 per share." (¶ 14).

The complaint does not charge, however, that the purpose of the tender offer was the artifi-cial stimulation of market activity in order to assure the tippee stockholders in Roosevelt large profits. See, for an interesting discussion of the effect of tender offers on market activity, *American Standard, Inc. v. Crane Co.,* 346 F.Supp. 1153, 1160 (S.D.N.Y.1972), *rev'd on other grounds,* 510 F.2d 1043 (2d Cir.), *cert. denied,* 421 U.S. 1000, 95 S.Ct. 2397, 44 L.Ed.2d 667 (1975).

charges that these directors in bad faith disregarded the good investment opportunity of a Roosevelt acquisition in June 1969 and used their positions to forestall GW Land's tender offer in order to avoid a negative impact on the consolidated financial statement of GWI, its earning and its market performance. It is thus claimed upon information and belief that these directors sacrificed the best interests of the shareholders of GW Land to their personal interests and the interest of GWI "and refused to make the investment in June when the average price per share of Roosevelt was approximately $31." (*Id.* ¶ 38). By the end of September GWI's equity in GW Land had fallen below 50%, and Roosevelt stock was selling at approximately $40 per share. (*Id.* ¶ 39). Plaintiff contends that "a tender offer in June or July would have been made at approximately $36 per share, rather than the $46.50 and more, which GW Land eventually was forced to pay" when it ultimately made its tender offer (*id.* ¶ 40) and therefore seeks damages in the amount of $10.50 per share or a total of $4,200,000.

The fourth cause of action does not specify any violation of Section 10(b) or Rule 10b–5. It incorporates by reference the allegations of the first and second causes of action and concludes therefore that the "fourth cause of action . . . also states a violation of federal securities laws." (Plaintiff's Memo. in Opposition at 3). There is no allegation in the fourth cause of action that GW Land paid an unfair amount for Roosevelt stock pursuant to the September tender offer. *See Green v. Santa Fe Industries, Inc., supra,* 533 F.2d at 1291; *Levine v. Biddle Sawyer Corp., supra,* 383 F.Supp. at 622.

■ The allegations that GW Land could have purchased Roosevelt stock at an earlier date but was prevented from doing so by reason of a conflict of interest on the part of its board of directors is not actionable under Section 10(b) and Rule 10b–5. *Not engaging in a securities transaction due to*

deceptive conduct does not satisfy the statutory requirement that the deception occur "'in connection with the purchase or sale of any security.'" *See Blue Chip Stamps v. Manor Drug Stores, supra,* 421 U.S. at 731, 95 S.Ct. at 1924; *cf. Mount Clemens Industries, Inc. v. Bell,* 464 F.2d 339 (9th Cir. 1972). The cause of action containing allegations based upon information and belief does not state circumstances constituting any scheme of fraudulent deception or manipulation with the particularity that is mandated by Fed.R.Civ.P. 9(b). *Felton v. Walston and Co.,* 508 F.2d 577, 580 (2d Cir. 1974); *Segal v. Gordon, supra,* 467 F.2d at 608; *Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442, 444 (2d Cir. 1971); *cf. In re Republic Nat. Life Ins. Co.,* 387 F.Supp. 902, 906 (S.D.N.Y.1975).[8]

### THE THIRD CAUSE OF ACTION

■ The third cause of action, brought derivatively on behalf of GW Land's successor, Madison Square, repeats the allegations of the first and second causes of action and alleges that in July 1970 Everett had instituted lawsuits in federal court in New York and Illinois on substantially the same grounds as the instant suit, and sought as further relief in the Illinois suit the rescission of certain contracts between Everett and individual and corporate defendants as well as $48 million in damages. (Complaint ¶¶ 23, 24).

Plaintiff charges that Everett came to a private agreement in May 1971 with defendants to wrongfully discontinue her lawsuits, without shareholder or court approval, in consideration of a block of stock in Hollywood Turf Club Inc. ("Hollywood"), a subsidiary of Madison Square. (*Id.* ¶¶ 25, 27–29). It is further charged that this block of stock was a corporate asset of Madison Square and was wrongfully transferred to Everett by the corporation's directors in breach of their fiduciary duties for purposes of their own interests. (*Id.* ¶¶ 30, 31). Plaintiff seeks an injunction

---

8. Affidavits in support of a motion for summary judgment must be made on personal knowledge. Fed.R.Civ.P. 56(e).

against the settlement agreement, a recovery of the Hollywood stock to the corporation, or, in the alternative, money damages totaling $48 million.

The third cause of action alleges no violation of the federal securities law antifraud provisions. Although plaintiff would qualify as a shareholder of the seller corporation (*id.* ¶ 26) involved in the securities transaction with Everett, there is no allegation of the elements of Section 10(b) and Rule 10b–5 other than the conclusory allegation that the settlement was "wrongful" and in breach of the fiduciary duties owed by the corporation's directors. (*Id.* ¶¶ 28–30). As mentioned earlier, such allegations will not satisfy the requirement that fraudulent acts be specifically detailed in the complaint. Plaintiff does not explain how the transfer of Hollywood stock to Everett constituted fraud. Everett's derivative claims were dismissed with prejudice only to her but without prejudice to other corporate shareholders.[9] Furthermore, Everett was not an insider of the corporation and thus owed no fiduciary duty as such in negotiating the settlements principally agreed upon by May 1, 1971. Finally, it appears that Everett has been released by GWI, GW Land, and the successor Madison Square from any liability arising out of circumstances preceding the settlement. Consequently, it is evident that Everett's discharge bars suit by the very corporate signatories, GWI and Madison Square, that plaintiff purports to represent in this lawsuit.

Not only is plaintiff barred from bringing suit against Everett, but the claims appear meritless. Plaintiff may have a claim against the directors who transferred the Hollywood stock to Everett, but such a charge amounts to corporate mismanagement and abuse of fiduciary responsibilities, which are cognizable not under the federal securities law but under state corporate laws.

**9.** It may be noted that the dismissals of the several Everett actions appear to have been accomplished with court approval, despite the

### CONCLUSION

 In sum, then, none of the causes of action in plaintiff's complaint successfully state a claim for violations of Section 10(b) and Rule 10b–5. Without the existence of a federal claim, the Court is without subject matter jurisdiction to entertain the pendent state claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Iroquois Industries v. Syracuse China Corp.,* 417 F.2d 963, 970 (2d Cir. 1969), *cert. denied,* 399 U.S. 909, 90 S.Ct. 2199, 26 L.Ed.2d 561 (1970); *Heyman v. Heyman,* 356 F.Supp. 958, 961 (S.D.N.Y. 1973).

Accordingly, all of defendants' motions are granted and plaintiff's complaint is dismissed. Plaintiff's motion for summary judgment is denied.

So ordered.

allegation of the complaint. (Everett Affidavit ¶¶ 5, 10 and Exhibits F and G).