**Michael FINNEGAN, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**CAMPEAU CORP., a corporation, R.H. Macy & Co., Inc., a corporation and Macy Acquiring Corp., a corporation, Defendant.**

**No. 89 Civ. 1130 (CSH).**

United States District Court, S.D. New York.

Oct. 17, 1989.

Wechsler, Skirnick, Harwood, Halebian & Feffer, New York City (Robert A. Skirnick, of counsel), Specks & Goldberg, Chicago, Ill. (Perry Goldberg, of counsel), Saveri & Saveri, San Francisco, Cal. (Guido Saveri, of counsel), Hallisey & Johnson, San Francisco, Cal. (Jeremiah F. Hallisey, of counsel), Gene Mesh & Associates, Cincinnati, Ohio (Gene I. Mesh, of counsel), for plaintiff.

Weil, Gotshal & Manges, New York City (Helene D. Jaffe, Harris J. Yale, Judith M. Yellin, of counsel), for defendant R.H. Macy & Co., Inc.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This motion under Rule 12(b)(6), F.R. Civ.P., poses the issue of whether a share-

holder of a target company, disappointed by an agreement between two rival bidders to cease their competition and cooperate in the target's acquisition, may state a claim against the erstwhile competitors under the antitrust laws.

## I.

In his complaint plaintiff Michael Finnegan alleges that he is a shareholder in Federated Department Stores, Inc. ("Federated"). The complaint further alleges that during early 1988, defendants R.H. Macy & Co., Inc. ("Macy") and Campeau Corp. ("Campeau") were engaged in a bidding war to buy Federated. In March and April of 1988 Macy and Campeau were the sole bidders for Federated. At that time, the complaint continues, Macy and Campeau agreed that instead of competing further with each other for Federated, they would conspire to obtain the target company as cheaply as possible. In furtherance of that alleged conspiracy, Macy and Campeau agreed that Macy would cease bidding and let Campeau be the buyer, thereafter dividing the benefits of their conduct between themselves.

The theory of the complaint, as summarized by plaintiff in his brief, is that initially both Macy and Campeau were poised to outbid the other for Federated; each was willing to bid substantially more than prior bids; and each knew that its rival was also willing to do so. "Ultimately, after submitting ever-increasing bids based on this posture, defendants, in order to avoid the disadvantage that would accrue to each of them as a result of that price competition, agreed to submit a rigged bid at a price fixed pursuant to their conspiratorial agreement, to the harm of plaintiff and all other shareholders similarly situated." Brief at 3–4.

Plaintiff characterizes this conduct as "classic horizontal price fixing" and "bid rigging", reflective of "hard core anti-competitive conduct ..." Brief at 1.

Plaintiff sues Macy and Campeau on his own behalf and, invoking Rule 23, F.R. Civ.P., on behalf of all other Federated shareholders similarly situated. Plaintiff bases his claim upon section 1 of the Sherman Act, 15 U.S.C. § 1, and invokes this Court's jurisdiction under section 4 of the Sherman Act, 15 U.S.C. § 4.

Macy now moves to dismiss the complaint under Rule 12(b)(6) on the ground that it fails to state a claim upon which relief can be granted. Macy contends (1) that transactions involving the securities of a single company in connection with a struggle for control of that company are excluded from the antitrust laws; (2) that application of the antitrust laws to the case at bar would be impermissibly inconsistent with the regulatory scheme of the federal securities laws; and (3) that the plaintiff, a shareholder of the target and acquired company, lacks standing to sue under the antitrust laws.

## II.

Section 1 of the Sherman Act prohibits "[e]very contract, combination ... or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. While a literal reading of the statute might support Finnegan's claim, § 1 is not read literally, since to do so "would outlaw the entire body of private contract law." *The National Society of Professional Engineers v. United States*, 435 U.S. 679, 688, 98 S.Ct. 1355, 1363, 55 L.Ed.2d 637 (1978). One limitation on the reach of 1 of the Sherman Act is the requirement that the alleged restraint involve "trade or commerce" within the meaning of the statute. Federal courts have frequently grappled with that issue, which forms the basis for Macy's first contention at bar. Lower federal courts conduct that analysis in the light of *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 495, 60 S.Ct. 982, 993, 84 L.Ed. 1311 (1940), in which the Supreme Court defined "trade or commerce" to be "commercial competition in the marketing of goods or services." Congress' purpose in the Sherman Act, the Court stated in *Apex*, was:

... the prevention of restraints to free competition in business and commercial transactions which tended to restrict production, raise prices or otherwise control

the market to the detriment of purchasers or consumers of goods and services . . .

*Id.* 310 U.S. at 493, 60 S.Ct. at 992.

The case at bar is not the first to consider whether a transaction concerning the stock of a single company constitutes trade or commerce within the meaning of § 1 of the Sherman Act, that is, whether it affects the purchasers or consumers of goods and services. This Court answered that question in the negative in *Bucher v. Shumway,* 452 F.Supp 1288 (S.D.N.Y.1978) (Tenney, J.), *aff'd,* 622 F.2d 572 (2d Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 48 (1980). The Third Circuit reached the same conclusion in *Kalmanovitz v. G. Heileman Brewing Company,* 769 F.2d 152 (3rd Cir.1985), citing with approval Judge Tenney's opinion in *Bucher.* 769 F.2d at 156.

In *Bucher* Judge Tenney was confronted with simultaneous offers by the Signal Company and Gulf & Western to purchase approximately one-third of the outstanding shares of Signal. Plaintiffs, Signal shareholders, attacked this joint tender offer as violative of § 1 of the Sherman Act. Their theory was that the agreement "deprived all Signal shareholders of a rise in the price of their shares which would otherwise have been generated if Gulf & Western and Signal had bid individually and competitively against each other and against Dresser Corporation ..., another company which had an interest in acquiring control of Signal." 452 F.Supp at 1289. Thus the antitrust claim of the plaintiffs in *Bucher* is indistinguishable from that of plaintiff at bar. Judge Tenney dismissed the antitrust claim. He quoted the Supreme Court's analysis of "trade or commerce" in *Apex, supra,* observing that the Sherman Act is not applied except "to restraint upon commercial competition in the marketing of goods or services." Judge Tenney concluded:

> The purchase and sale of shares by an investor does not fit comfortably within this definition. Much less does the mere offer to purchase.
> *Id.* at 1290.

In *Kalmanovitz* the Third Circuit reached the same conclusion by a comparable analysis of comparable facts.

Plaintiff at bar cites no case holding that a transaction concerning the stock of a single company constitutes trade or commerce within § 1 of the Sherman Act. But plaintiff argues that *Bucher* and *Kalmanovitz* do not constitute authority binding on this Court, and that in any event they are inconsistent with three Supreme Court decisions: *United States v. National Association of Securities Dealers, Inc.,* 422 U.S. 694, 95 S.Ct. 2427, 45 L.Ed.2d 486 (1975); *Gordon v. New York Stock Exchange,* 422 U.S. 659, 95 S.Ct. 2598, 45 L.Ed.2d 463 (1975); and *Silver v. New York Stock Exchange,* 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963).

It is true that under the technical workings of *stare decisis,* neither *Bucher* nor *Kalmanovitz* bind this Court. While the Second Circuit affirmed *Bucher,* it did so in a summary order of affirmance, not citable as precedent under § 0.23 of the Second Circuit's rules. *Kalmanovitz* was decided by the Third Circuit, whose opinions are not binding upon me for geographical reasons. But the fact that *Bucher* and *Kalmanovitz* are not binding upon me does not mean that I might not find them persuasive, particularly in the absence of authority to the contrary.

Notwithstanding plaintiff's contentions, I do not regard the three Supreme Court cases he cites as authority to the contrary. In that I also agree with Judge Tenney in *Bucher* and the Third Circuit in *Kalmanovitz.* Each case rejected identical appeals by the unsuccessful plaintiffs to the same three Supreme Court cases.

In *United States v. National Association of Securities Dealers, supra,* the Court considered the extent to which the regulatory authority conferred upon the Securities and Exchange Commission by the Maloney Act, 15 U.S.C. § 78o-3, and the Investment Company Act of 1940, 15 U.S.C. § 80a-1 *et seq.,* displaced the antitrust policies embodied in § 1 of the Sherman Act. The particular issue was whether certain sales and distribution practices

employed in marketing securities of mutual funds were immune from antitrust liability; an agreement among investment companies and associations of broker-dealers restricted sales and distribution of such funds. The Supreme Court held these practices were immune from antitrust liability. It may seem paradoxical that plaintiff at bar derives comfort from the holding in *National Association of Securities Dealers.* But comfort is said to be derived from statements of the Court that price fixing of the sales price of securities "normally would constitute per se violations of section 1 of the Sherman Act", 422 U.S. at 729, 95 S.Ct. at 2447, and that "implied antitrust immunity is not favored and can be justified only by a convincing showing of clear repugnancy between the antitrust laws and the regulatory system." *Id.* at 719–720, 95 S.Ct. at 2442–43.

In *Gordon v. New York Stock Exchange, Inc., supra,* plaintiff, a small investor, sued the New York Stock Exchange, the American Stock Exchange and two firms of the Exchanges claiming that the system of fixed commission rates utilized by the Exchanges at that time for transactions of less than $500,000 violated §§ 1 and 2 of the Sherman Act. The Supreme Court affirmed the holdings of the lower courts that the fixed commission rates were immunized from antitrust attack because the Securities Exchange Act of 1934 vested the Securities and Exchange Commission with authority to approve or disapprove exchange commission rates, the SEC having exercised that power in approving the commission rates at issue. Again plaintiff at bar finds support in the Court's general utterances in *Gordon,* to the effect that repeal of the antitrust laws "by implication is not favored and not casually to be allowed." 422 U.S. at 682, 95 S.Ct. at 2611.

In *Silver v. New York Stock Exchange, supra,* the court held that a New York Stock Exchange mandate which arbitrarily deprived independent securities dealers of essential telephone links with the central market violated § 1 Sherman Act.

Each of these Supreme Court cases deals with securities industry practice. None of them considered the applicability of the antitrust laws to the pricing by agreement of an individual issuer's shares. In *Bucher* Judge Tenney rejected the plaintiff's reliance upon *National Association of Securities Dealers, Gordon,* and *Silver:*

> In none of these cases was the pricing of an individual insurer's shares the subject of antitrust scrutiny; all pertained to industry-wide practices affecting some aspect of the general distribution of shares or to some unfair restraint of a business organization engaged in the brokering of shares to the public.
> 452 F.Supp. at 1291.

The Third Circuit distinguished this line of Supreme Court authority in like terms:

> These cases, however, involve industry-wide practices affecting some aspect of the general distribution of shares or the brokering of shares to the public; they do not involve fixing the price of a single insurer's shares in a tender offer.
> 769 F.2d at 157.

Judge Tenny's conclusion in *Bucher* was foretold by Judge Conner's analysis in *Madison Fund, Inc. v. Charter Co.,* 406 F.Supp. 749, 751 (S.D.N.Y.1975) ("The antitrust statute was framed to preserve normal competitive forces in interstate markets against unreasonable inhabitation ... not ... to police the performance of private contracts."). I agree with Judge Tenney's conclusion in *Bucher* that: "In the purchase and sale of listed shares of an individual insurer, supervising the formation and execution of those contracts is a matter of securities and not antitrust law." *Id.* at 1291.

While for Rule 12(b)(6) purposes I accept the allegations of the complaint as true, I conclude that they do not state a claim under § 1 of the Sherman Act.

### III.

Having concluded that the antitrust laws do not apply to an agreement by two parties to purchase shares of a single issuer at an agreed-upon price, I need not consider at length Macy's second contention that

application of the antitrust laws to the case at bar would be unacceptably inconsistent with the federal securities laws' regulatory scheme.

■ It is useful to observe, however, that the Securities and Exchange Act of 1934, significantly broadened by the Williams Act to include control of tender offers such as that at bar, deal specifically and comprehensively with the subject. The securities laws expressly limit recovery to actual damages, which is to say out-of-pocket losses. One court has concluded that the treble-damage provision of the antitrust laws, 15 U.S.C. § 15, is unacceptably inconsistent with the federal securities laws' approach to the problem. In *Schaefer v. First National Bank of Lincolnwood*, 326 F.Supp. 1186, 1192 (N.D.Ill. 1970), the district court wrote:

> These differences are substantial and would encourage investors to bring suit under the Sherman Act. Certainly Congress could not have intended that the damage restrictions contained in the carefully drawn prohibitions against market manipulation in the 1934 Act could be evaded and effectively nullified by the simple expedient of evoking the Sherman Act.

The Seventh Circuit affirmed the district court's opinion in language which includes approval of that antitrust analysis. 509 F.2d 1287 (7th Cir.1975) at 1299–1300; *cert. denied* 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976).

I agree with this analysis as well.

## IV.

In the view I take of the case, I need not reach Macy's third contention, which challenges plaintiff's standing to sue under the antitrust laws if a viable antitrust claim existed. In point of fact, it does not.

Plaintiff's brief contains impassioned rhetoric more suitable to a social or economic polemic than an analysis of his claim's legal viability. Social and economic historians will undoubtedly comment upon this decade's merger and acquisition feeding frenzy, and the contribution to the common good of the individual and institutional feeders. But federal courts are courts of limited jurisdiction, not forums for social or philosophical debate. It is plaintiff's burden to demonstrate that the acts of which he complains are proscribed by the particular act of Congress upon which he seeks to found jurisdiction. Plaintiff fails to make that showing in the case at bar.

Macy's motion to dismiss the complaint for failure to state a claim under the antitrust laws is granted. The Clerk of the Court is directed to dismiss the complaint with prejudice. Although only Macy has moved for dismissal, the conclusion applies with equal force to co-defendant Campeau Corp., and so the Clerk will dismiss the complaint in its entirety.

It is SO ORDERED.